[No. 5284.  Decided January 21, 1905.]

THE STATE OF WASHINGTON, *on the Relation of Prosser Falls Land and Irrigation Company, Respondent,*

v. E. W. R. TAYLOR, *Appellant.*[1]

MUNICIPAL CORPORATIONS—POWERS—GRANTING FRANCHISES FOR LIGHT PLANTS. A city of the fourth class is authorized to pass an ordinance granting an electric light and power franchise; even although a previous franchise which was not exclusive had been granted to another party.

MUNICIPAL CORPORATIONS—CITY OF FOURTH CLASS—ORDINANCES— MAYOR'S DUTY TO SIGN—VETO—MANDAMUS, WHEN LIES. The charter of cities of the fourth class gives the mayor no veto or discretionary power, with reference to signing ordinances, and under Bal. Code, § 1012, providing that every ordinance of a city of the fourth class shall be signed by the mayor, mandamus lies to compel the mayor to sign an ordinance duly passed by the council, since his duties depend entirely upon the charter provisions.

Appeal from a judgment of the superior court for Yakima county, Rudkin, J., entered April 13, 1904, upon sustaining a demurrer to an answer, directing the issuance of a writ of mandamus, as prayed for. Affirmed.

*Snyder & Preble* and *H. J. Snively* for appellant, to the point that the mayor's signature is required to indicate his approval, and is essential, cited: *Bills v. Goshen,* 117 Ind. 221, 20 N. E. 115, 3 L. R. A. 261; *Chicago etc. R.*

[1]Reported in 79 Pac. 286.

*Co. v. Council Bluffs,* 109 Iowa 425, 80 N. W. 564; *Alt-man v. Dubuque,* 111 Iowa 105, 82 N. W. 461; *Heins v. Lincoln,* 102 Iowa 69, 71 N. W. 189; *Moore v. Perry,* 119 Iowa 423, 93 N. W. 510.

*Whitson & Parker,* for respondent.

DUNBAR, J.—This is a special proceeding, prosecuted by the relator, Prosser Falls Land and Irrigation Company, against the defendant, as mayor of the town of Prosser, a city of the fourth class, to compel him, by writ of mandamus, to sign a proposed ordinance of said town passed by its city council, granting to said relator a franchise to erect and maintain electric light and electric power plants in said city and to erect and maintain in the public streets thereof poles, wires, and other fixtures for furnishing electric light and electric power. After setting forth the ordinance, the petition alleged that the mayor refused to sign the same, and prayed that a writ issue to compel him to sign said ordinance. To this petition the defendant answered. The plaintiff demurred generally to defendant's answer to the petition for said writ of mandamus, which demurrer was sustained. Judgment was entered, requiring appellant to sign the said proposed ordinance, and directing that a writ of mandamus issue to that end. The proceeding is in this court, upon appeal by said defendant from said judgment.

The petition set out the ordinance, which is too lengthy to reproduce here—in fact, there is no contention over the form of the ordinance, the answer being that the city had no power to pass such an ordinance, it being beyond the scope of its authority—and alleges that the mayor was not compelled under the charter to sign such ordinance, but that the charter provision requiring him to sign the ordinances contemplated an approval by him of the ordi-

nance before the signing; that the act was not a minis-
terial act, but one of discretion. The answer further al-
leged, in defense of the mayor, the fact that certain other
franchises had, at a prior time, been granted to one
Thompson. We think, without entering into a specific dis-
cussion of the question, that ample authority is given by
the charter to the city council to pass the ordinance that
it did pass. And there is no merit in the further answer
that a similar franchise had been granted to Thompson,
for it does not appear that an exclusive franchise had
been granted to any one, even if the city had power to
grant such a franchise. The main contention of the ap-
pellant is that the charter of the town of Prosser, to wit,
the general law governing cities of the fourth class, vests
in the mayor power to withhold his signature to any pro-
posed ordinance. Section 1012, Bal. Code, which is the
section governing in this respect cities and towns of the
fourth class, is as follows:

"  .  .  .   Every ordinance shall be signed by the
mayor, attested by the clerk, and published at least once
in a newspaper published in such town, or printed and
posted in at least three public places therein."

It is insisted by the appellant that, inasmuch as the statute
provides for the attestation of the ordinance by the clerk,
it is evidently not the purpose of the statute, in providing
for the mayor's signing the said ordinance, that it also
shall be for the purpose of attestation, and that a contrast
is drawn between the mayor's signing and the clerk's at-
testing. It is also insisted that, if it were a fact that the
mayor has no legal authority to approve ordinances, and
therefore he acts in a ministerial capacity, only, in sign-
ing them, then the alleged ordinance in question is abso-
lutely void for the reason that its going into effect is ex-
pressly contingent upon its approval by the mayor. But

it seems to us that this is not sound reasoning, and assumes the very question in controversy, and it might as well be contended that an ordinance was void because the clerk had not attested it and, therefore, the clerk could not be compelled to attest it by reason of the ordinance being void. The adoption of such a rule of reasoning would, we think, operate against the enforcement of all municipal law.

This question must be considered in the light of the basic principle of law that all the powers and duties of a mayor depend upon the provisions of the charter in cases of this kind, a principle which is so universally acknowledged that the citation of authority in its support becomes unnecessary. There being no provision of the charter granting any veto or equivalent power to the mayor, none can be accorded him by the courts. The statute in this respect simply provides that he shall sign every ordinance. But an examination of the charter powers of cities of the second and third classes strengthens the idea that the mayor's duty in this case is purely ministerial. Of course, the cities of the first class make their own charters. The mayors of the cities of the second and third classes are especially clothed with authority to veto ordinances, and are made a part of the legislative department of such cities. But no such authority being vested in the mayor by the charter of cities of the fourth class, it must be concluded, not that by inadvertence the legislature failed to clothe the mayors of such municipalities with the veto power, but that the legislative intention was to discriminate in this respect between cities of the second and third and cities of the fourth class.

On the whole, we are satisfied that the judgment of the superior court was correct, and it is therefore affirmed.

MOUNT, C. J., and FULLERTON and HADLEY, JJ., concur.