[Civ. No. 530.   Second Appellate District.—July 8, 1908.]

## CITY OF SAN BUENAVENTURA, a Municipal Corporation, and WILLIAM HAMILTON, W. L. LEWIS and CHARLES SEWELL, as Majority of Members of Board of Trustees Thereof, Petitioners, v. WILLIAM McGUIRE, as President of Said Board of Trustees, Respondent.

MANDAMUS—AUTHENTICATION OF POLICE ORDINANCE IN CITY OF FIFTH CLASS—MINISTERIAL DUTY OF PRESIDENT OF BOARD.—Under the terms of the municipal incorporation act of 1893, in a municipal incorporation of the fifth class, the duty of the president of its board of trustees, chosen from among its members, in authenticating by his signature a municipal ordinance passed under the police power, imposing a penalty, is purely ministerial, and may be enforced by writ of mandate.

ID.—PARTIES—JOINDER OF PETITIONERS—CITY—OTHER MEMBERS OF BOARD.—Both a city of the fifth class, and also the other members of its board of trustees, are specially interested in enforcing the authentication of an ordinance passed by the board; and they may be joined as petitioners for a writ of mandate to compel its authentication by the president of the board.

ID.—EFFECT OF ACT OF 1897—VETO POWER—ENLARGEMENT OF EXCEPTION—CONSTRUCTION AGAINST INJUSTICE AND ABSURDITY.—The act of March 27, 1897, purporting to grant the veto power to the mayor of municipal incorporations, as to municipal ordinances imposing a penalty, with the proviso or exception that it shall not apply to cities where the mayor is a member of the city council or other governing body, and purporting in a subsequent section to grant the same powers to the president of a board of trustees or other chief executive officer, as in case of the mayor, is to be construed so as not to operate unjustly or absurdly, and as intended to enlarge the proviso or exception so as to include all cases where the mayor or other chief executive officer is a member of the governing body.

ID.—RULES OF STATUTORY CONSTRUCTION.—If a statute is ambiguous or doubtful, or susceptible of different constructions, such liberality of construction is justified as, within a fair interpretation of its language, will effect its apparent object and promote justice; and if it is fairly susceptible of two constructions, one leading inevitably to mischief or absurdity, and the other consistent with justice, sound sense, and wise policy, the former should be rejected and the latter adopted.

8 Cal. App.—32

Id.—Application of Act of 1897 Under Constitution.—Under the constitutional amendment, the act of 1897 cannot apply to any case of a city having a freeholders' charter, and can only apply to cities and to their charters which have organized under the general scheme embraced in the municipal incorporation act, subject to the proper construction and effect of the act of 1897, which makes it inapplicable in the present case.

PETITION for writ of mandate to the President of the Board of Trustees of the City of San Buenaventura.

The facts are stated in the opinion of the court.

Merle J. Rogers, for Petitioners.

Shepherd & Poplin, for Respondent.

ALLEN, P. J.—Petition for writ of mandate.

San Buenaventura is a city of the fifth class, the government of which, by the general municipal incorporation act of 1883, is vested in a board of five trustees. By a vote of three of the trustees, being the petitioners herein, an ordinance, in the exercise of the police power, was passed imposing a penalty. The president of the board and one other member thereof voted against such ordinance, and the president, relator herein, refuses to sign the ordinance and this proceeding is instituted to compel such action on the part of the president.

A demurrer is interposed to the petition, general, as well as upon the ground of misjoinder of parties plaintiff. At the same time an answer was filed, to which a general demurrer is interposed.

The general act providing for the organization, incorporation, and government of municipal corporations, enacted March 13, 1883 (Stats. 1883, p. 93), divides the cities of the state into six classes, in four of which a mayor is provided. And in the fourth class he is made a member of the council with the right to vote only in case of a tie. In the fifth and sixth classes the city council is required to elect one of its members president. Among the duties imposed upon such president of the city council is the signing, in conjunction with the clerk, of all ordinances preliminary to their publication. No veto power is given to the president of the board

of trustees in either class, nor is there anything in the act requiring the president of the board of trustees to perform the duties of the mayor. Afterward, on March 27, 1897 (Stats. 1897, p. 190), the legislature passed an act entitled, "An Act to require Ordinances and Resolutions passed by the City Council or other legislative body of any municipality to be presented to the Mayor, or other chief executive officer of such municipality, for his approval."

"Section 1. Every ordinance . . . imposing a penalty, which shall have passed the City Council, shall, before it takes effect, be presented to the Mayor for his approval. The Mayor shall return such ordinance or resolution to the City Council within ten days after receiving it. If he approve it, he shall sign it, and it shall then take effect. If he dis- approve it, he shall specify his objections thereto in writing. If he do not return it with such disapproval within the time above specified, it shall take effect as if he had approved it. . . . If the ordinance or resolution shall fail to receive, upon the first vote thereon after its return with the Mayor's disapproval, the affirmative votes of three-fourths of all the members, it shall be deemed finally lost, . . . *provided,* that the provisions of this section shall not apply to cities in which the Mayor is a member of the City Council, or other governing body.

"Sec. 2. The word 'municipality,' and the word 'city' as used in this Act, shall be understood and so construed as to include, and is hereby declared to include, all corporations heretofore organized and now existing, and those hereafter organized, for municipal purposes. . . .

"Sec. 4. In municipalities in which there is no Mayor, then the duties imposed upon said officer by the provisions of this Act shall be performed by the President of the Board of Trustees, or other chief executive officer of the municipality."

The duties devolving upon the president of the board of trustees, in relation to the signing of an ordinance of such a character as the one under consideration, must be determined by a proper construction of the acts above cited.

An examination of the act of 1897, especially when we consider the language of section 2, impresses one with the conviction that the legislature, under a mistaken idea that it could by general laws control all municipalities, even in their municipal affairs, undertook to define the manner in which

all of such municipalities should enact their ordinances, and that it was the legislative intent that every municipality whose chief executive officer was not a member of the legislative body, and therefore not familiar with proposed legislation, should be provided with a copy of all ordinances passed, for examination, that he might approve or disapprove the same. It is further manifest from the proviso that it was the legislative intent that such presentation of the copy of the ordinances, and subsequent acts of the chief executive in relation thereto, was neither necessary nor proper, where the chief executive was a member of the legislative body. It must be conceded that the legislature was not happy in the manner in which it expressed this intent; for the act provides that the chief executive officer of municipalities having no mayor shall perform all of the duties imposed upon a mayor by section 1 of the act which are, the examination after presentation, and approval or disapproval, and in the proviso is mentioned only the "Mayor," as distinguished from the other chief executive, and the whole of the act is open to the criticism of imposing, by section 4, certain duties upon the president of the board, from the performance of which, by the proviso, he is exempted. "The rule is well settled in this state, and most probably in all other states, that if a statute is ambiguous or doubtful, or susceptible of different constructions or interpretations, then such liberality of construction is justified as within a fair interpretation of its language will effect its apparent object and promote justice." (*Felton* v. *West*, 102 Cal. 269, [36 Pac. 676].) To construe the act of 1897 as respondent contends, to the effect that the president of the board of trustees of a city of the fifth class is given veto power, is to say that the legislature undertook to confer upon one member of the board of trustees, who should be selected to preside, power and authority to prevent the passage of any ordinance, except by the approval of every other member of the council except himself; and that as to cities of the fourth class the mayor, an independent officer, but who by the statute of 1883 is made a member of the city council, should, for that reason, be shorn of such power and required to sign ordinances, whether approved or disapproved by him, if a majority of the council should pass them. Mr. Justice McFarland in *In re Mitchell,* 120 Cal. 386, [52 Pac. 799], speaking for the court, says:

"Where it (a statute) is fairly susceptible of two construc-
tions, one leading inevitably to mischief or absurdity, and the
other consistent with justice, sound sense, and wise policy,
the former should be rejected and the latter adopted." Ap-
plying this rule, we are led to the conclusion that, however
ambiguous and uncertain the language of the section may be,
and however difficult it may be to reconcile the two sections,
nevertheless, the general intent of the legislature is so appar-
ent that the proviso found in section 1 should be made to
read "Mayor or other chief executive," or that the word
"Mayor" should be held to include all executive officers sim-
ilarly situated. Otherwise, injustice and an absurdity would
result.

The act of 1897, then, having no application to cities or
towns in which the mayor or other chief executive is a mem-
ber of the governing body, the acts of respondent here in
question must be considered with reference to the provisions
of the municipal corporation act relating to municipalities
of the fifth class. It appears to be conceded that so consid-
ered the duty of the president of the board of trustees in
signing and authenticating the ordinances of the town of
San Buenaventura is a ministerial act, and one subject to
enforcement by writ of mandate.

Counsel for respondent further contend that, assuming the
ministerial character of the act, nevertheless, the petition is
defective in that there is a misjoinder of parties plaintiff.
It may be conceded that the city of San Buenaventura and
the individuals composing the board were not all necessary
parties, but it does not follow that they are improper parties.
(*Barber* v. *Mulford,* 117 Cal. 358, [49 Pac. 206].) The city
as a legal entity affected by the ordinance is beneficially
interested in all governmental questions within its jurisdic-
tion, and may sue and be sued in all matters affecting the
municipality. It certainly is interested in an ordinance,
legally passed, the effectiveness of which is prevented by the
failure of one of its officials to perform a ministerial act.
On the other hand, the three members of the board of trus-
tees, as trustees, upon whom the law has enjoined the duty
of enacting legislation necessary for the protection of the
citizens and in the interest of the public welfare, are inter-
ested in a manner different from the great mass of the public
in seeing to the complete execution of their trust and the

performance by others of ministerial acts necessary to the full protection of public rights. (*Board of Commissioners* v. *Board of Trustees,* 71 Cal. 312, [12 Pac. 224].)

It is further insisted that the act of 1897 is unconstitutional for various reasons assigned. We think it sufficient to say that this act, under the constitutional amendment, only applies "to cities and to their charters which have organized under the general scheme embraced in the municipal corporation act." (*Morton* v. *Broderick,* 118 Cal. 487, [50 Pac. 644].) It may be stated, further, that only cities of the fourth, fifth and sixth classes, under any reading of the act, are affected, as all other classes mentioned in the municipal incorporation act are in fact governed by freeholders' charters. Under the interpretation above given to the act and its proviso, the same has no present application to any city of any class now organized, and no one affected by the act is before the court complaining.

We are of opinion, therefore, that the petition is sufficient to entitle the petitioners to the relief sought, and the demurrer thereto is overruled. Further, that the answer, which, in effect, raises only the legal questions involved in the demurrer to the petition, constitutes no defense, and the demurrer to such answer should be sustained.

For the foregoing reasons, a peremptory writ of mandate should issue as prayed for, and it is ordered accordingly.

Taggart, J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 3, 1908; Beatty, C. J., dissented therefrom and filed the following opinion:

BEATTY, C. J.—Petition for writ of mandate.

I dissent from the order denying a transfer of this cause, because it seems perfectly clear to me that the decision of the district court of appeal violates a canon of statutory construction universally accepted by common-law courts, and which in this state has been made a part of our code law. "In the construction of a statute or instrument the office of the judge is simply to ascertain and declare what is in terms

or in substance contained therein, not to insert what has been omitted, *or to omit what has been inserted, and where there are several provisions or particulars,* such a construction is, *if possible, to be adopted as will give effect to all."*   (Code Civ. Proc., sec. 1858.)   This rule requires that meaning and effect should be given to section 4 of the act of 1897, if possible.   The construction adopted by the court deprives that section of all meaning, and of any possible effect; completely obliterates it from the statute, and this partly upon the ground of the supposed absurdity which would result from giving it effect, and partly upon the ground that if the *proviso* at the end of section 1 is given any effect, there is a conflict between it and section 4, and that the *proviso* being more reasonable, and more in accordance with the supposed general intent of the law, must prevail.   In my opinion, neither of these reasons holds good.   The supposed absurd result of giving effect to section 4 is that it would be impossible to pass an ordinance imposing a penalty, or an .ordinance of any other of the classes enumerated in section 1 of the act, without the vote of every other member of the board if the president happened to be opposed to its adoption.   This must be conceded, but if the legislature had passed an act plainly requiring·a unanimous vote of the board to give validity to an ordinance of any of the enumerated classes, I know of no ground upon which a court could take upon itself to enforce an ordinance which had received only four out of five votes in the council.   And if, giving effect to all the provisions of the act of 1897, it must be conceded that four out of five votes are required to pass such an ordinance against the opposition of the president, there appears to be even less justification for the judicial enforcement of such an ordinance when it has been passed by the vote of a bare majority of the board and against the opposing vote of the president.

As to the supposed conflict between the *proviso,* if given any effect, and section 4, it proves to be an unfounded supposition when it is shown that the purpose of the *proviso* is fulfilled in applying it to municipal corporations of the fourth class, in which class, and in which class alone, the mayor—an officer elected by the people—is made a member, *eo nomine,* of the council, the legislative body, and given a casting

vote in the passage of ordinances.   (Stats. of 1883, p. 326.) The *proviso,* I say, has its full effect in its application to corporations of the fourth class, and there was a valid and perfectly apparent reason why the mayor in that class of corporations should be specially excepted from the require- ments of the act of 1897, for by section 670 of the municipal corporations act his veto power and the mode of its exercise was already clearly and exactly defined.   If his power was not to be enlarged, the *proviso* was necessary, and as its only effect was to leave the mayors of that class of corporations with the same veto power they had been accustomed to exer- cise, we are bound to suppose that was what the legislature meant.   In this view there is no conflict between the *proviso* and section 4.   The first applies to cities where the mayors elected by popular vote are members of the city council— cities of the fourth class, the second applies to cities in which there are no mayors, *eo nomine*—independent officers elected by popular vote—but only a president of the board of trus- tees, viz.: (cities of the fifth and sixth class) upon whom the duties prescribed by the act are devolved.

There is, in my opinion, no conflict in the different pro- visions of the act, no ambiguity or uncertainty, and nothing in the result of its enforcement according to its terms which a court is entitled to pronounce an absurdity which the legis- lature cannot be supposed to have contemplated.

I think the writ of mandate should have been denied.