[L. A. No. 7636.   In Bank.—May 28, 1925.]

PACIFIC PALISADES ASSOCIATION (a Corporation), Appellant, v. CITY OF HUNTINGTON BEACH, a Municipal Corporation, et al., Respondents.

[1] POLICE POWER—RESTRICTION OF USE OF PROPERTY—LIMITATION.— While the use to which one may put his property may be restricted or regulated by the state, in the exercise of its police power, so far as it may be necessary to protect others from injury from such

---

1.   See 5 Cal. Jur. 734.

use, it is elementary that the enjoyment of the property cannot be interfered with or limited arbitrarily.

[2] ID.—MUNICIPAL CORPORATIONS—ZONING.—It must be taken as very definitely settled in this state that the right to zone may be resorted to by municipalities upon a proper invocation of the police power, but such zoning must be reasonably necessary and reasonably related to the health, safety, morals, or general welfare of the community.

[3] ID.—REGULATION OF BUSINESS—MONOPOLY.—A municipality is not permitted, under the guise of regulating business and segregating it to a particular district, to grant a monopoly to business establishments and enterprises already situated in unrestricted districts.

[4] ID.—REGULATION OF OIL WELLS.—A municipality has the unquestioned right to regulate the business of operating oil wells within its limits, and to prohibit their operation within delineated areas and districts, if reason appears for so doing, but ordinances having that effect must be reasonable, and must be for the purpose of protecting the public health, comfort, safety, or welfare.

[5] ID.—EXERCISE OF POWER OF REGULATION—PRESUMPTIONS.—Every intendment is to be made in favor of the lawful exercise of municipal power regulating business, and it is not the province of courts, except in clear cases, to interfere with the exercise of that authority.

[6] ID.—EXERCISE OF POLICE POWER—ARBITRARY INTERFERENCE WITH BUSINESS.—Municipal by-laws and ordinances undertaking to regulate useful business enterprises are subject to investigation in the courts, with a view to determining whether the law or ordinance is a lawful exercise of the police power; or whether, under the guise of enforcing police regulations there has been an unwarranted and arbitrary interference with the right to carry on a lawful business, to make contracts, or to use and enjoy property.

[7] ID.—INJUNCTION—PLEADING.—In an injunction suit, wherein the complaint presents a case in which a property owner is prohibited by a municipality from installing machinery and operating an oil well on its property within the city, while in other districts of the city, more thickly populated and densely settled, and devoted to residence purposes, the conduct of like operations is permitted, a general demurrer to the complaint should be overruled and the plaintiff accorded an opportunity to establish, if it can, the unreasonableness and discriminatory character of the ordinance, which

2.  See 18 Cal. Jur. 858.
3.  See 18 Cal. Jur. 824.
4.  Prohibition or regulation of oil or gas wells, note, 3 A. L. R. 270.
5.  See 5 Cal. Jur. 714.
6.  See 18 Cal. Jur. 834.

it alleges amounts to an unwarranted and arbitrary interference with its constitutional rights.

[8] MUNICIPAL CORPORATIONS—CITIES OF FIFTH AND SIXTH CLASSES—ORDINANCES—APPROVAL BY MAYOR.—In cities of the fifth and sixth classes, formed under the provisions of the general act providing for the organization, incorporation, and government of municipal corporations (Henning's General Laws 1920, p. 1961), the legislative power is vested in a board of five trustees, there being no mayor, and there is nothing in the organic act requiring or permitting the submission of ordinances to any executive, or other, officer for his approval before they become effective.

[9] ID.—LEGISLATIVE ENACTMENTS—WHEN EFFECTIVE.—The ordinary rule is that legislative enactments become operative upon their passage, unless there is some express provision of law or a provision in the act itself to the contrary.

[10] ID.—SIGNING OF ORDINANCE BY MAYOR—PURPOSE AND EFFECT OF—MANDATE.—The signing of ordinances by the mayor, or other designated officer of a municipality, is for one of two purposes. If, by virtue of the right of veto such officer is invested with some of the law-making power of the municipality his signing is for the purpose of registering his approval of the measure, and without such signature and approval the ordinance is of no effect; but, if the signing is merely for the purpose of authenticating by his signature an ordinance legally passed, the act is merely ministerial, and may be enforced by writ of mandate.

[11] ID.—WHEN REQUIREMENT FOR SIGNING DIRECTORY.—Where the signing of an ordinance by the mayor is required for the purpose of verification, rather than approval, the requirement is held to be directory, rather than mandatory, and lack of the mayor's signature does not vitiate the measure.

[12] ID.—MUNICIPAL CORPORATIONS ACT — PASSAGE OF ORDINANCE — WHEN EFFECTIVE—SIGNING.—There is nothing in the act providing for the organization, incorporation, and government of municipal corporations (Henning's General Laws 1920, p. 1961), either expressly declaring or indirectly indicating that ordinances duly passed by a board of trustees of cities of the sixth class shall not become effective on their passage, and there is no provision in it that signing by the president, attestation by the clerk, or publication of ordinances are conditions precedent to their becoming valid enactments.  These ministerial acts are merely for the purpose of authenticating acts of the board and giving notice of the contents of the ordinances passed by it.

9.  See 18 Cal. Jur. 920; 23 Cal. Jur. 620; 25 R. C. L. 796.
11.  See 18 Cal. Jur. 916.

[13] Mandamus—When Lies—Performance of Official Duty.—The writ of *mandamus* may be issued to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station; but if the duty an officer is called upon to perform requires the exercise of an act of judgment on his part, his decision is not subject to be reviewed by a proceeding for a writ of *mandamus*. Where the discretion ceases, however, and the act to be done is purely ministerial, the duty becomes absolute, and can be compelled through the application of the writ.

---

(1) 12 **C. J.**, p. 945, n. 25.    (2) 28 **Cyc.**, p. 736, n. 46.    (3) 28 **Cyc.**, p. 767, n. 45.    (4) 28 **Cyc.**, p. 768, n. 52.    (5) 28 **Cyc.**, p. 282, n. 96.    (6) 28 **Cyc.**, p. 282, n. 1.    (7) 32 **C. J.**, p. 264, n. 58.    (8) 28 **Cyc.**, p. 357, n. 92.    (9) 36 **Cyc.**, p. 1193, n. 11.    (10) 28 **Cyc.**, p. 356, n. 75, p. 357, n. 92.    (11) 28 **Cyc.**, p. 357, n. 92.    (12) 28 **Cyc.**, p. 357, n. 92.    (13) 38 **C. J.**, p. 690, n. 5.

APPEAL from a judgment of the Superior Court of Orange County. Z. B. West, Judge. Reversed.

The facts are stated in the opinion of the court.

Tanner, Odell & Taft for Appellant.

Lewis W. Blodgett, City Attorney, and Rush M. Blodgett for Respondents.

WASTE, J.—Plaintiff brought an action seeking to enjoin the City of Huntington Beach and its city marshal from attempting to enforce the provisions of an ordinance prohibiting plaintiff from erecting derricks, installing machinery, and drilling oil wells on its own lands within the city limits. The trial court sustained the general demurrer to the complaint, interposed by the defendants, and plaintiff declined to amend. Judgment was entered for the defendants, from which judgment plaintiff appeals.

The appellant is the owner of thirteen acres of land located within the boundaries of that portion of the City of Huntington Beach designated and set apart as a residence district in two ordinances to be hereinafter referred to. This land, it is alleged, is of great value for the purpose of producing oil and kindred substances, and of a much less

---

13.    *Mandamus* to control exercise of discretion, note, 98 **Am. Dec.** 375.    See, also, 16 **Cal. Jur.** 804; 18 **R. C. L.** 124.

value for residential purposes.    The predecessor in interest of appellant was about to enter into leases of the land to persons or corporations who agreed to drill oil wells thereon, and did enter into one lease whereby the lessee agreed to drill four wells, and by the terms of which the owner of the property would reasonably expect to receive a sum in excess of fifteen hundred dollars per day royalty from the production of oil therefrom.    Just prior to the making of this lease, the board of trustees of Huntington Beach adopted an emergency ordinance, subsequently amending same, establishing a business and a residence district in the city, and making it unlawful, among other things, for any person, firm or corporation to erect, establish, carry on, or maintain within the residence or business districts an oil well or derrick, or the business of drilling or operating for the discovery or production of oil, gas, hydrocarbon, or other kindred substances.    The lessee of appellant is ready, willing, and able to proceed with the drilling of wells and the production of oil on the lands of appellant, but he and appellant are prevented from proceeding with their plans by reason of the ordinances referred to, the city threatening to prosecute appellant and imprison its officers, agents, or employees or any persons attempting to proceed with the production of oil under the terms of the lease.

It is alleged that the respondent city arbitrarily and without reason adopted the ordinances prohibiting the drilling for oil on appellant's land, and that its action is unreasonable, arbitrary, and discriminatory.    In support of these general averments, it is alleged that the property of appellant is proven oil land, and is situate upon the principal oil-bearing district of the City of Huntington Beach.    Within five hundred feet of appellant's easterly line there are now producing wells, and within nine hundred feet of its property there are no less than twenty completed wells.    Some of these wells are in operation and produce large quantities of oil.    Thirty-six blocks of Huntington Beach, lying north and east of appellant's premises, and within the purported residence district, are sparsely populated.    The larger part of this territory is vacant and unoccupied by residences, there being not more than twenty houses in that section of the city when the first ordinance was passed.    Just east of the eastern boundary line of the established residence

district, and not included therein, is the most costly elementary school building in the City of Huntington Beach, and a number of residences. Near the schoolhouse and the residences numerous oil wells have been drilled since the adoption of the ordinances, and derricks and engine-houses have been erected and oil-producing machinery installed. In another direction, within ten blocks of the lands of appellant, there is a section of the city more densely populated than the restricted area, the greater portion of which is occupied by residences, and in which the city has permitted the drilling of oil wells and the production of oil. The erection of oil derricks and engine-houses and the drilling of oil wells on its premises will not,· appellant alleges, in any way endanger the safety, health, or welfare of the people of Huntington Beach.

We are of the opinion that the appellant has stated a cause of action. The business of boring for and producing oil is a lawful enterprise. The effect of the ordinance, absolutely prohibiting the maintenance or operation of oil wells within certain designated limits of the City of Huntington Beach, is to deprive the owners of real property within such limits of a valuable right incident to their ownership. [1] While the use to which one may put his property may be restricted or regulated by the state, in the exercise of its police power, so far as it may be necessary to protect others from injury from such use, it is elementary that the enjoyment of the property cannot be interfered with or limited arbitrarily. (*In re Kelso,* 147 Cal. 609, 611 [109 Am. St. Rep. 178, 2 L. R. A. (N. S.) 796, 82 Pac. 241].) [2] It must be taken as very definitely settled in this state that the right to zone may be resorted to by municipalities upon a proper invocation of the police power. (*Miller* v. *Board of Public Works,* 195 Cal. 477 [38 A. L. R. 1479, 234 Pac. 381]; *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 Pac. 388].) But such zoning must be reasonably necessary and reasonably related to the health, safety, morals, or general welfare of the community. [3] A municipality is not permitted, under the guise of regulating business and segregating it to a particular district, to grant a monopoly to business establishments and enterprises already situated in unrestricted districts. (*In re White,* 195 Cal. 516 [234 Pac. 396].) [4] The City of Huntington

Beach has the unquestioned right to regulate the business of operating oil wells within its city limits, and to prohibit their operation within delineated areas and districts, if reason appears for so doing. (*Ex parte Hadacheck*, 165 Cal. 416, 420 [L. R. A. 1916B, 1248, 132 Pac. 584].) Ordinances having that effect must be reasonable, and must be for the purpose of protecting the public health, comfort, safety, or welfare. [5] Every intendment is to be made in favor of the lawful exercise of municipal power making such regulations, and it is not the province of courts, except in clear cases, to interfere with the exercise of that authority. But, as was recently said by the supreme court of the United States, "while property may be regulated to a certain extent if regulation goes too far it will be recognized as a taking." (*Pennsylvania Coal Co.* v. *Mahon*, 260 U. S. 393, 415 [28 A. L. R. 1321, 67 L. Ed. 322, 43 Sup. Ct. Rep. 158, see, also, Rose's U. S. Notes].) [6] Therefore, notwithstanding this general grant of power, it is a thoroughly well-settled doctrine that municipal by-laws and ordinances undertaking to regulate useful business enterprises are subject to investigation in the courts, with a view to determining whether the law or ordinance is a lawful exercise of the police power; or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the right to carry on a lawful business, to make contracts, or to use and enjoy property. (*Dobbins* v. *Los Angeles*, 195 U. S. 223 [49 L. Ed. 169, 23 Sup. Ct. Rep. 18]; *In re Application of Throop*, 169 Cal. 93, 99 [145 Pac. 1029]; *Curtis* v. *City of Los Angeles*, 172 Cal. 230, 234 [156 Pac. 462].)

[7] It is apparent from the averments of the complaint that appellant has attempted to plead a situation analogous to those considered in the two decisions of this court last cited. It has been fairly successful, and presents a case in which a property owner is prohibited by the municipality from installing machinery and operating an oil well on its property, while in other districts of the city, more thickly populated and densely settled, and devoted to residence purposes, the conduct of like operations is permitted. (*In re Application of Throop, supra,* and *Curtis* v. *Los Angeles, supra.*) For these reasons, appellant should be accorded the opportunity to establish, if it can, the unreasonableness

and discriminatory character of the ordinance, which it alleges amounts to an unwarranted and arbitrary interference with its constitutional rights. The outcome of the controversy will, of course, depend upon the findings of the trial court when the issues have been finally submitted and determined. The demurrer should have been overruled.

When the ordinance establishing residence and business districts in Huntington Beach, and regulating business therein, was adopted, it contained a section directing the city clerk to certify to its passage and cause it to be published, the ordinance to take "effect immediately from and after publication." It is alleged in the complaint that the president of the board of trustees did not append his signature thereto, as required by the provision of the general corporation bill (Stats. 1883, p. 270), section 863 of which provides that every ordinance of the city must be signed by the president of the board of trustees and attested by the clerk, and must be published by the board at least once in a newspaper of general circulation published and circulated in the city. Because of this omission, appellant contends that the ordinance restricting its use of its property is null and of no effect. The trial court sustained the contention of the respondent that the signing by the president constituted only a ministerial act, and that the validity of the ordinance did not depend upon his signature.

[3] Huntington Beach is a city of the sixth class, formed under the general act providing for the organization, incorporation, and government of municipal corporations (Henning's General Laws 1920, p. 1961). In cities of the fifth and sixth classes, formed under the provisions of that act, the legislative power is vested in a board of five trustees. There is no mayor, and there is nothing in the organic act requiring or permitting the submission of ordinances to any executive, or other officer for his approval before they become effective. The board is required to elect one of its members president, but his sole power in legislative matters is confined to his one vote as a member of the board. No veto power is given to him as president of the board. Ordinances are not required to be submitted to him for his approval before becoming effective. His act in signing, therefore, is only the performance of a ministerial duty for the sole purpose of authenticating the action of the board.

[9]  The ordinary rule is that legislative enactments become operative upon their passage, unless there is some express provision of law or a provision in the act itself to the contrary.  (*Gay* v. *Engebretsen,* 158 Cal. 21, 26 [139 Am. St. Rep. 67, 109 Pac. 876].)  This rule has usually been construed to make the enactment effective from the time it has passed through all the forms required by law to give it force and validity.  (36 Cyc. 1196, cited in *Dorr* v. *Marsh,* 184 Cal. 588, 589 [194 Pac. 1002].)  It is not contended in this case that the ordinance was not duly published; it bears the corporate seal, and has the attestation of the city clerk, and his certificate of its due passage by the board of trustees. The sole question to be determined, therefore, is whether or not the failure of the president of the board to sign the ordinance before it was published renders it an illegal enactment.

[10]  The signing of ordinances by the mayor, or other designated officer of a municipality, is for one of two purposes.  If, by virtue of the right of veto, such officer is invested with some of the law-making power of the municipality, his signing is for the purpose of registering his approval of the measure.  Without such signature and approval the ordinance is of no effect.  But, if the signing is merely for the purpose of authenticating by his signature an ordinance legally passed, the act is purely ministerial, and may be enforced by writ of mandate.  (*San Buenaventura* v. *McGuire,* 8 Cal. App. 497, 501 [97 Pac. 526, 528]; *State* v. *Taylor,* 36 Wash. 607 [79 Pac. 286].)  [11]  There is, therefore, a broad distinction between a requirement of the approval of a mayor, or other executive officer, in order to give effect to ordinances, and a mere requirement that he shall sign all ordinances; for, while his signature may be, and usually is, the means adopted to designate his approval when his approval is required, if his signature alone is required the element of approval is absent.  (21 Am. & Eng. Ency. of Law, pp. 964, 965; McQuillin on Municipal Corporations, par. 691.)  In such cases, where the signing is required for the purpose of verification, rather than approval, the requirement is held to be directory, rather than mandatory, and lack of signature does not vitiate the measure.  (28 Cyc., pp. 356, 357, and cases cited.)  Dillon on Municipal Corporations, fifth edition, volume 2, paragraph

607, adopts the rule that acts of attestation are directory only in their nature, and a failure to observe them will not invalidate an ordinance or prevent its taking effect.

Appellant relies on the case of *City of San Buenaventura* v. *McGuire*, 8 Cal. App. 497 [97 Pac. 526, 528] for substantial support of its contention. We find little in the decision to help it. The court was there construing an act requiring ordinances and resolutions passed by the city council, or other legislative body of any municipality, to be presented to the mayor, or other chief officer of such municipality, for his approval. (Stats. 1897, p. 190.) The act provided (section 1) that the provisions should not apply to cities in which the mayor is a member of the city council, or other governing body. Assuming to act under that statute, the president of the board of trustees of the city of San Buenaventura, a city of the fifth class, organized under the general municipal corporation bill, refused to sign an ordinance duly passed by the board of trustees, and which the president had voted against. On petition for a writ of mandate to compel the president of the board to affix his signature to the ordinance, the court held that as no veto power is given to the president of the board, and there being nothing in the act under which the city of San Buenaventura was formed requiring the president of the board to perform the duties of a mayor, the act of 1897 did not apply. This proceeding in *mandamus* was instituted to determine the question whether or not the statute of 1897 had any application to cities of the fifth class formed under the general municipal corporations act. It appears to have been conceded in the case that the duty of the president of the board in signing and authenticating the ordinances of the city of San Buenaventura was a ministerial act subject to enforcement by writ of mandate, if the special statute did not apply. From the facts in the case, and from such portions of the record as we have been able to examine, we are unable to discover anything that makes the decision authority for holding that the ordinance there under consideration would have been invalid if it had been attested by the city clerk and published as required by the general act.

[12] There is nothing in the statute under which Huntington Beach was incorporated either expressly declaring or indirectly indicating that ordinances duly passed by the

board of trustees of cities of the sixth class shall not become effective on their passage. There is not to be found in it any provision that signing by the president, attestation by the clerk, or publication of ordinances are conditions precedent to their becoming valid enactments. These ministerial acts are merely for the purpose of authenticating the action of the board, and giving notice of the contents of the ordinances passed by it. Consequently, the signing by the president is not a condition precedent to the validity of an ordinance duly passed by the board of trustees. (*Commonwealth* v. *Davis,* 140 Mass. 485, 486 [4 N. E. 577]; *Commonwealth* v. *Williams,* 120 Ky. 314 [86 S. W. 553]; *People* v. *Cole,* 70 Cal. 59, 60 [11 Pac. 481].) If the board in the instant case had not, by its order, declared that the ordinance should become effective only from and after its publication, it would have taken effect, under the general rule, immediately on its passage, and publication thereafter would have been merely a ministerial act to give the people of Huntington Beach notice of its requirements. (*City of Sacramento* v. *Dillman,* 102 Cal. 107, 111 [36 Pac. 385].) The board having suspended the operation of the ordinance until it was published, we are satisfied that it became effective from and after the date when that was accomplished.

The suggestion is advanced that, because in the instances cited (*San Buenaventura* v. *McGuire, supra,* and *State* v. *Taylor, supra*), and in other states, courts have issued writs of mandate in similar cases to compel the signing of ordinances, the courts must have concluded that the performance of such ministerial acts was essential to the validity of the enactments under consideration. Otherwise, proceeds the argument, the courts violated the rule that "a court does not do the vain and foolish thing of ordering an inferior . . . tribunal to do that which accomplishes nothing; it exercises power to issue the writ only when some useful purpose may be accomplished thereby." (16 Cal. Jur., p. 776.) In the San Buenaventura case it was conceded that *mandamus* would lie, and it does not appear from the decision in the Washington case that the point was there made. While we are not now concerned with the question, we are not prepared to say that a useful purpose may not be accomplished by compelling the performance of a plain statutory duty, even though it may be ministerial and directory only.

[13]    The writ of *mandamus* may be issued to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station. (Code Civ. Proc., sec. 1085.) It is well settled, of course, that if the duty an officer is called upon to perform requires the exercise of an act of judgment on his part, his decision is not subject to be reviewed by a proceeding for a writ of *mandamus*. But, where the discretion ceases, and the act to be done is purely ministerial, the duty becomes absolute, and can be compelled through the application of the writ. (*Keller* v. *Hewitt*, 109 Cal. 146, 149, 150 [41 Pac. 871]; *Dufton* v. *Daniels*, 190 Cal. 577, 582 [213 Pac. 949].)

The judgment is reversed and the cause is remanded to the lower court, with directions to overrule the demurrer interposed to the plaintiff's complaint.

Seawell, J., Richards, J., Lawlor, J., and Lennon, J., concurred.