[Civ. No. 4735. Fourth Dist. Aug. 27, 1953.]

MONTEREY OIL COMPANY (a Corporation), Appellant, v. THE CITY COURT OF THE CITY OF SEAL BEACH, Respondent; STATE LANDS COMMISSION, Real Party in Interest.

Forgy, Reinhaus, Miller & Kogler, Stanley M. Reinhaus, O'Melveny & Myers, Louis W. Myers, William W. Clary and William W. Alsup for Appellant.

Dana R. Williams and Charles C. Stratton for Respondent.

Edmund G. Brown, Attorney General, and Everett W. Mattoon, Assistant Attorney General, for Real Party in Interest.

MUSSELL, J.—Plaintiff Monterey Oil Company, hereinafter called "appellant," appeals from a judgment denying its petition for a peremptory writ of prohibition to restrain the City Court of the City of Seal Beach (now the Justice's Court for the Huntington Beach-Seal Beach Judicial District), hereinafter referred to as "respondent," from proceeding with, hearing or exercising any further jurisdiction over a certain criminal complaint in an action entitled *"People of*

*the State of California* vs. *Monterey Oil Company, No. 5846,"* charging appellant with having violated ordinance No. 230 of the city of Seal Beach. The said ordinance, adopted March 7, 1939, in section 1 thereof, declares it to be unlawful and a nuisance for any person, whether as principal or agent, to erect, construct, or install or to work upon or assist in any way in the erection, construction, or installation of any derrick, machinery, or other apparatus, or equipment designed or intended to be used for the purpose of drilling for oil, gas, or other hydrocarbon substances, or to drill, or operate, or to work upon or assist in any way in the drilling or operating of a well for oil, gas, or other hydrocarbon substances, or to pump or produce gas or other hydrocarbon substances from any well not actually being drilled or existing at the time the ordinance takes effect, within the territorial limits and boundaries of said city of Seal Beach.

Appellant moved to dismiss the complaint on the grounds that respondent was without jurisdiction to try the action; that ordinance No. 230 is constitutionally invalid in its attempted application to appellant and is void and invalid upon its face for the reason that it is arbitrary and unreasonable in purporting to prohibit entirely an activity which is not in itself a nuisance or wrong or unlawful. This motion was denied and after a plea of not guilty was entered, the cause was set for trial on October 10, 1952. On October 3, 1952, appellant filed its petition in the Superior Court in Orange County for a writ of prohibition, alleging that the said ordinance is constitutionally invalid as applied to appellant; that appellant would be subjected to unreasonable and vexatious expense in time, money and delay and would suffer irreparable damage if said criminal trial were permitted to proceed against it; that nine similar proceedings based upon the same acts and conduct as were the basis of the proceedings against appellant had been commenced in respondent court against various other corporate and individual defendants; that to permit all of said proceedings to continue would result in an unnecessary multiplicity of actions and an undue burden on the courts; that it is of great importance to the welfare of the State of California that the questions presented by said petition be determined quickly.

The superior court issued its alternative writ of prohibition restraining respondent from further proceeding in the criminal action until further order of the court and issued an order that respondent show cause why that court should not

be absolutely restrained from taking any further proceedings in the criminal action except to dismiss it.

On October 24, 1952, respondent and the city of Seal Beach, named in the petition for the writ as a real party in interest, filed their return to said petition contending and alleging that said ordinance is constitutionally valid. On October 29, 1952, the State Lands Commission, also named as a real party in interest, filed its return to the petition supporting the petitioner's position and alleging that the said ordinance is constitutionally invalid.

The trial court in its judgment, entered January 26, 1953, denied petitioner's motion for judgment on the pleadings, and having concluded that the return of the respondent city of Seal Beach created legal issues and was in the nature of a general demurrer to the petition for writ of prohibition and order to show cause, decreed that the petition did not state sufficient facts to warrant the relief demanded and denied the peremptory writ of prohibition. However, the court, in order to preserve the status quo pending any appeal by petitioner from the judgment, continued in effect during the pendency of this appeal the alternative writ of prohibition issued on October 3, 1952.

There is no dispute as to the material facts. The city of Seal Beach is a city of the sixth class, the boundaries of which extend oceanward 3 miles from the shoreline of the Pacific Ocean and the said city does not own or hold any title to or any proprietary interest in any of the tide or submerged lands lying within its boundaries.

On September 24, 1945, the State Lands Commission issued to appellant's assignor a lease for the production of oil and gas from tide and submerged lands located within the city limits of the city of Seal Beach. The lands covered by said lease extend from the shoreline oceanward a distance of about 3 miles. The said lease was issued pursuant to the applicable provisions of the Public Resources Code, section 6871 et seq., which permit leases of tide and submerged lands when it appears to the commission that oil or gas deposits are known or believed to be contained in any such lands and may be or are being drained by wells upon adjacent lands. Section 6873 of said code also requires that each well drilled shall be "drilled only upon filled lands" or "slant drilled from an upland or littoral drill site to and into the subsurface of the tide or submerged lands covered by the lease . . . or from a drill site located upon any pier heretofore constructed . . ." Pursuant to the

terms of this lease, the authorization of the State Lands Commission, and upon obtaining consent of the United States Army engineers to the filling of an area sufficient to there permit drilling, appellant commenced operations at a point approximately 1½ miles from the shore for the purpose of drilling an oil well into the submerged lands. These operations led to the issuance of the criminal complaint against the appellant.

The principal and controlling issue here involved is whether said ordinance No. 230 is valid in application to the tide and submerged lands leased to appellant.

■■ Any city may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws (Cal. Const., art. XI, § 11) and, as in the instant case, a conflict may exist because the ordinance prohibits that which the state authorizes, namely, drilling operations on state-owned submerged lands. (*People* v. *Commons,* 64 Cal.App.2d 925, 929 [148 P.2d 724] ; *In re Iverson,* 199 Cal. 582, 587 [250 P. 681] ; *Markus* v. *Justice's Court,* 117 Cal.App.2d 391, 396 [255 P.2d 883].) ■ An ordinance is likewise invalid if it invades a field already fully occupied by state legislation. (*Pipoly* v. *Benson,* 20 Cal.2d 366, 371 [125 P.2d 482, 147 A.L.R. 515].) ■ And as was said in *Natural Milk Producers Assn.* v. *City & County of San Francisco,* 20 Cal.2d 101, 109 [124 P.2d 25] :

"It is the general rule that where the state law so covers the entire field that there is no room for municipal regulation, the latter regulations are necessarily in conflict with the state law." (Citing cases.)

■ And on page 108:

"It is true, as a general rule, that when there is a conflict between the local police regulations and the general police regulations of the state, the former is invalid if passed after the general law or is superseded if followed by the latter. In either case the result is the same, the local law has no effective force. There is of course the qualification with respect to chartered cities in regard to local laws dealing with purely municipal affairs, with which we are not here concerned; then the local law prevails. (18 Cal.Jur. 831, et seq.; Cal. Const., art. XI, secs. 6 and 11.)"

In 1938 the California State Legislature enacted the "State Lands Act of 1938." (Stats. Ex. Sess. 1938, chap. 5, p. 23.) By this act a State Lands Commission was created and was vested with the administration of and jurisdiction over state

lands, including oil, gas, and other mineral lands, whether uplands, tide or submerged lands. It is provided therein, in article 6, that no political subdivision of the state or any city shall grant or issue any lease, license, easement, privilege or permit vesting authority in any person to take or extract oil or gas from tide or submerged lands owned by the state; that whenever it appears to the commission that oil or gas deposits are known or believed to be contained in any such lands and may be or are being drained by means of wells upon adjacent lands not owned by the state, the commission shall thereupon be authorized and empowered to lease any such lands; that each well drilled pursuant to the terms of such lease shall be drilled only upon filled lands or shall be slant drilled from an upland or littoral drill site to and into the subsurface of the tide or submerged lands covered by the lease; that the derricks, machinery, and all other surface structures, equipment, and appliances shall be located only upon filled lands or upon the littoral lands or uplands, and all surface operations shall be conducted therefrom. Pollution and contamination of the ocean and tidelands and all impairment of and interference with bathing, fishing or navigation in the waters of the ocean or any bay or inlet thereof is prohibited and no oil, tar, residuary product of oil or any refuse of any kind from any well or works shall be permitted to be deposited on or pass into the waters of the ocean or any bay or inlet thereof. It was also provided in section 53 thereof that all leases should further provide that the lessee therein should comply with all valid laws of the United States and of the State of California and with all valid ordinances of cities and counties applicable to the lessee's operations.

As originally enacted, there was no provision in the State Lands Act of 1938 expressly granting exclusive jurisdiction over the tide and submerged lands to the State Lands Commission. In the following year the Legislature enacted a statute (Stats. 1939, ch. 646, p. 2074) adding section 48 to the State Lands Act to provide expressly that the State Lands Commission should have exclusive jurisdiction over all ungranted tide and submerged lands owned by the state with the right exclusively to administer and control all such lands and may lease or otherwise dispose of them.

In 1941 the Legislature incorporated the State Lands Act of 1938 into the Public Resources Code (Stats. 1941, ch. 548, p. 1875.) The sections of the State Lands Act of 1938 relating to the making of oil and gas leases on tide and submerged

lands are contained in Public Resources Code, sections 6871 to 6878. The provisions of section 87 of the State Lands Act of 1938, which provided that wells should be drilled from filled lands or slant drilled from upland or littoral drill sites and which prohibited pollution and contamination of the ocean and tidelands and impairment of and interference with bathing, fishing or navigation are contained in section 6873 of the Public Resources Code.

In *City of Oakland* v. *Hogan* (1940), 41 Cal.App.2d 333 [106 P.2d 987], the court interpreted section 48 of the State Lands Act to give exclusive jurisdiction to the State Lands Commission only in those cases where minerals were to be removed from the tide and submerged lands. Following this decision, the Legislature in 1941 (Stats. 1941, ch. 1274, p. 3219) added section 6216 to the Public Resources Code for the purpose of making it clear that the exclusive jurisdiction of the State Lands Commission over the tide and submerged lands was not limited to cases where oil and gas was to be removed from such lands, but rather such jurisdiction was to be exclusive without regard to the question whether such lands should contain oil, gas or other minerals. It was provided therein that the Legislature intended to and did vest in the commission full authority to administer, sell, lease, or dispose of the public lands owned by the state, including tidelands and submerged lands and that "the provisions of section 48 of the State Lands Act of 1938 . . . shall hereafter supersede and control over any other provision of law, whether general or special, relating to any tide or submerged lands . . . without regard to whether any of such lands contain or may contain oil, ·gas or other minerals, and any such other provisions of law in conflict therewith are repealed."

█ The foregoing legislative enactments demonstrate clearly that the state has fully occupied the field relative to the control and leasing of state-owned submerged lands and has exclusive jurisdiction over all such leases. Not only does the ordinance in question conflict with the state law in that it prohibits what the state law authorizes, to wit, the drilling for oil on submerged oil lands, but also it invades a field already fully occupied by state legislation and is, therefore, void, insofar as it applies to regulating the leasing and control of state-owned, submerged lands described herein.

█ The city of Seal Beach has no proprietary interest in the submerged lands involved nor is it the owner of the

soil or clothed with any riparian rights and it is not authorized to prevent the drilling operations being conducted by the appellant, who has a valid lease under authority of the State of California. (*City of San Pedro* v. *Southern Pac. Co.*, 101 Cal. 333 [35 P. 993].)

▮ Respondent contends that the exclusive jurisdiction of the State Lands Commission is expressly limited by the wording of Public Resources Code, section 6828, which provides in part that:

"All leases of lands containing oil or gas made or issued under this chapter . . . shall further provide that the lessee therein shall comply with all valid laws of the United States, and of the State of California, and with all valid ordinances of cities and counties applicable to lessee's operations, including, without limitation by reason of the specification thereof, the lessee's compliance with Division 3 of this code."

However, this contention is without merit. For the reasons heretofore stated, said ordinance No. 230 is invalid as sought to be here applied and section 6216 of the Public Resources Code supersedes and controls any other provision of law, whether general or special, relating to any tidelands or submerged lands, and said section 6828 cannot be construed to permit municipal prohibition or regulation of surface operations at a drill site located over state-owned submerged lands, which operations are authorized and required by the State Lands Commission pursuant to general state law.

▮ It is further contended by respondent that section 6872 of the Public Resources Code further limits the powers of the lands commission in respect to the leasing of tidelands in that it provides:

"Whenever it appears to the commission that oil or gas deposits are known or believed to be contained in any such lands and may be or are being drained by means of wells upon adjacent lands, the commission shall thereupon be authorized and empowered to lease any such lands, either as a tract or in parcels of such size and shape as the commission shall determine, for the production of oil and gas therefrom." and that section 6873 of said code further limits the commission in its tideland leasing activities in that it provides that all leases granted by the commission shall contain the requirement that each well shall be slant drilled from an upland or littoral site to and into the subsurface of the tide or submerged lands covered by the lease or drilled or slant drilled from a drill site located upon any pier here-

tofore constructed for drilling purposes and available for such drilling upon any tide or submerged lands described in the lease and the derricks, machinery and all surface structures, equipment and appliances shall be located only upon filled lands or the littoral lands or uplands or upon any pier heretofore constructed and available for such drilling upon any tide or submerged lands described in any valid existing lease. However, the commission determined herein that the best interests of the state would be served by the drilling of a well or wells from filled lands to be located in the tidelands approximately 1½ miles, more or less, distant from the shore and at a site to be approved by the War Department. We have no hesitancy in holding that the operations being conducted by the appellant herein are upon an "island" which constitutes filled lands within the purview of the statute.

If said ordinance No. 230 is construed to apply to the operations of appellant herein, as respondent contends, it is unreasonable and arbitrary in that an attempt is made therein to entirely prohibit such drilling operations without reference to the question of whether such drilling would in fact be injurious or harmful. As was said in *Pacific P. Assn.* v. *Huntington Beach*, 196 Cal. 211, 216 [237 P. 538, 40 A.L.R. 782] :

". . . The business of boring for and producing oil is a lawful enterprise. The effect of the ordinance, absolutely prohibiting the maintenance or operation of oil wells within certain designated limits of the City of Huntington Beach, is to deprive the owners of real property within such limits of a valuable right incident to their ownership. While the use to which one may put his property may be restricted or regulated by the state, in the exercise of its police power, so far as it may be necessary to protect others from injury from such use, it is elementary that the enjoyment of the property cannot be interfered with or limited arbitrarily. (*In re Kelso*, 147 Cal. 609, 611 [82 P. 241, 109 Am.St.Rep. 178, 2 L.R.A.N.S. 796] . . .)"

It is not apparent that appellant's operation at a point more than 1½ miles oceanward from the shoreline at Seal Beach will constitute a nuisance, or that the public beach will be damaged or that there is danger of "water pollution."

We conclude that since the State Lands Commission has been granted exclusive jurisdiction by statute over the submerged lands here involved, the city of Seal Beach

may not prohibit appellant's drilling operations on said submerged lands by ordinance No. 230. It is unnecessary to here pass upon the question of whether the said ordinance is valid and enforceable if applied to drilling operations conducted on areas in said city not under the exclusive jurisdiction and control of the state.

Judgment reversed.

Barnard, P. J., concurred.

A petition for a rehearing was denied September 23, 1953, and respondent's petition for a hearing by the Supreme Court was denied October 22, 1953. Carter, J., was of the opinion that the petition should be granted.