122 Cal.Rptr.2d 713 (2002)
100 Cal.App.4th 609
Steven TRAVIS et al., Plaintiffs and Appellants,
v.
COUNTY OF SANTA CRUZ, Defendant and Respondent.
No. H021541.
Court of Appeal, Sixth District.
July 25, 2002.
Rehearing Denied August 22, 2002.
Review Granted November 26, 2002.
*718 Steven Travis, Stanley M. Sokolow, Sonya Sokolow, In pro per, for Plaintiffs and Appellants.
Stephen D. Pahl, San Jose, Karen Kubala McCay, Pahl & Gosselin, for Amicus Curiae on behalf of Appellants.
Samuel Torres, Jr., County Counsel, Dwight L. Herr, Assistant County Counsel, for Defendant and Respondent and for Amicus Curiae on behalf of Respondent.
WUNDERLICH, J.
This case involves a challenge to Santa Cruz County's second dwelling unit ordinance. Proceeding by writ of mandate in the trial court, the petitioners asserted that the ordinance is preempted by state statute and that it is unconstitutional. The trial court denied the petition, chiefly on the ground that it was untimely. We will affirm.

FACTS AND PROCEDURAL HISTORY
Steven Travis (Travis) and Stanley M. Sokolow and Sonya Sokolow (the Sokolows) were petitioners below and are appellants here. The County of Santa Cruz (the County) is the respondent. At issue in this case is the validity of the County's Second Unit Ordinance (the Ordinance).
The Ordinance. The Ordinance was first enacted in December 1981, effective January 1982. It has been amended several times since then. As initially enacted, the Ordinance authorized a second dwelling unit of 640 square feet or less on those parcels large enough to qualify for two single family dwellings under the density limitations of the County's General Plan and Zoning Ordinance. The Ordinance included both occupancy and rent restrictions: occupancy was restricted to a maximum of two low-income adults or two average-income seniors, and affordable rent was required.
In March 1984, the County amended the Ordinance (Ordinance No. 3500). The amendments to the Ordinance relaxed the parcel size requirement.
More than a decade later, in August 1994, the County amended the Ordinance again. Among the substantive 1994 changes were these: the maximum size of the second dwelling was increased for certain specified parcels, the minimum parcel size was decreased for certain specified parcels, and the occupancy restrictions were relaxed to permit family members to reside in the second unit without regard to income.
In November 1997, the County again made substantive revisions to the Ordinance. Among the 1997 amendments were these: the maximum size of the second dwelling was increased again for some parcels, the minimum parcel size was decreased again for some parcels, and the occupancy restrictions were relaxed again, this time to eliminate the limitation to two adult occupants. In addition, the administrative processing level for applications for second units outside the Coastal Zone was reduced, as were the setback requirements. Finally, the amendments made the occupancy and rent restrictions applicable to the main dwelling unit in the event the property owner occupies the second unit.
Most recently, the Ordinance was amended again in March 1998, but those changes were not substantive.
*719 The Ordinance is codified at section 13.10.681 of the Santa Cruz County Code. (Santa Cruz County Code, § 13.10.681, pp. 816-820.) Of particular concern in this action are the Ordinance's occupancy standards, including the restrictions on rent levels, which are set forth in subdivision (e) of section 13.10.681 of the Santa Cruz County Code. (Id. at p. 819.)
Travis's Development. Travis owns a parcel of residential real property on Old Big Basin Road in Boulder Creek, in an unincorporated area of Santa Cruz County. In April 1999, Travis applied to the County for a development permit to convert a single family dwelling under construction into second dwelling unit and to construct a primary dwelling unit on the property. The County granted the permit, subject to the occupancy and rent conditions mandated by the Ordinance. Travis objected to the permit conditions by filing an administrative appeal, which was denied on June 21,1999.
The Sokolows' Development. The Sokolows also own residential real property in the unincorporated area of Santa Cruz County, consisting of two parcels located on Highview Drive, Santa Cruz. The Sokolows sought permits for second dwelling units on both of their parcels.
In 1996, the Sokolows sought and obtained a development permit that allowed them to construct a principal residence and a second dwelling unit on one of their parcels. The Sokolows undertook the permitted construction, and a certificate of completion on the second unit was issued in 1997. As required by the Ordinance and by their development permit, the Sokolows recorded a declaration of restrictions, which included occupancy restrictions and rental rate limitations on the second dwelling unit. The Sokolows did not challenge the 1996 permit conditions, administratively or otherwise.
In 1998, the Sokolows applied for a second unit development permit on their other parcel. That application was granted, again subject to the conditions mandated by the Ordinance. As before, the Sokolows did not pursue an administrative appeal from the permit conditions. However, in letters to the County's counsel in October and November 1998, they complained about the mandated conditions of their permit and argued that the Ordinance was preempted by the Costa-Hawkins Rental Housing Act, a state statute that limits local rent control efforts. (Civ. Code, § 1954.50 et seq.) The Sokolows' correspondence failed to persuade the County's counsel that the Ordinance was invalid. Thereafter, in December 1998, the Sokolows appeared before the County Board of Supervisors in an effort to have the Ordinance amended legislatively; that effort was equally unavailing.
Proceedings in the Trial Court. On September 7, 1999, acting in propria persona, Travis and the Sokolows filed a petition for a writ of traditional mandamus in Santa Cruz County Superior Court. Does 1-250,000 were named as additional petitioners, but no other parties came forward to join the petition.
The petition generally alleged that the occupancy and rent restrictions in the Ordinance violate state law and are unconstitutional. The petitioners prayed for an order enjoining enforcement and compelling the County to amend the Ordinance to remove the challenged restrictions. They also sought compensation and attorneys' fees.
Initially, the County demurred to the petition, claiming it was untimely and failed to state a cause of action. At the same time, the County also moved to strike portions of the petition. The County later withdrew its demurrer and filed an *720 answer to the petition. In its answer, the County asserted the statute of limitations as an affirmative defense.
The trial court conducted hearings in November and December 1999 and entertained extensive written briefing from both sides. In their submissions to the court, the petitioners challenged the validity of the Ordinance on a number of grounds, including these: (1) the Ordinance is preempted by the Costa-Hawkins Rental Housing Act; (2) the Ordinance violates the Unruh Civil Rights Act; (3) the Ordinance compels housing discrimination in violation of state law; (4) the Ordinance violates the state planning and zoning law; (5) the Ordinance effects an unconstitutional taking; and (6) the Ordinance is invalid for lack of a valid housing element in the County's general plan. The County disputed all of petitioners' contentions.
By formal order entered on March 27, 2000, the trial court denied the petition for writ of mandate. In its order, the court concluded that all of the petitioners' facial challenges to the Ordinance were time barred. The court also determined that the Sokolows' as-applied challenges were time barred. Finally, the court concluded that Travis's as-applied constitutional challenge was timely, but that there had been no taking. Consistent with its order, the court entered judgment denying the petition.
Petitioners moved to vacate, reconsider, and amend the judgment, and for leave to amend their petition. The County opposed petitioners' motion.
The trial court heard the motion and took it under submission. Thereafter, by formal order entered on May 11, 2000, the trial court denied petitioners' motion to vacate. Less than two weeks later, on May 23, 2000, the court, acting sua sponte, amended its order to include a statement about petitioners' failure to obtain class certification as to the fictitious Doe petitioners.
Meanwhile, on May 22, 2000, the day before the court filed its amended post-judgment order, petitioners filed a notice of appeal.

ISSUES ON APPEAL
First, petitioners raise a procedural issue concerning the trial court's amended post-judgment order. They assert that the amended order has no effect, since it was filed after the trial court had lost its jurisdiction by virtue of this appeal.
Next, petitioners argue that their substantive challenges to the Ordinance are timely. That argument requires us to first consider whether petitioners' challenges to the Ordinance are facial or as-applied claims.
Finally, petitioners renew some of the substantive challenges to the Ordinance that they raised below. In particular, they contend on appeal that the Ordinance is preempted by state statute, that it improperly discriminates on the basis of age, and that it effects an unconstitutional taking.

DISCUSSION

I. The Amended Order.
We first consider whether the petitioners' appeal deprived the trial court of jurisdiction to amend its post-judgment order.[1]
*721 As a general rule, "an appeal from a judgment order strips the trial court of any authority to rule on the judgment. [Citations.]" (Pazderka v. Caballeros Dimas Alang, Inc. (1998) 62 Cal.App.4th 658, 666, 73 Cal.Rptr.2d 242. See, Code Civ. Proc., § 916, subd. (a): Subject to exceptions that do not apply here, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby....") Thus, when an appeal has been taken, the trial court "may not vacate or amend a judgment or order valid on its face...." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 21, p. 82. See, Copley v. Copley (1981) 126 Cal.App.3d 248, 298, 178 Cal. Rptr. 842.)
In this case, petitioners perfected their appeal the day before the trial court amended its order denying the motion to vacate the judgment. The trial court therefore lacked jurisdiction to amend the order. As a consequence, we will disregard the amendment, which concerned class certification of the Doe petitioners. Furthermore, we will review the trial court's original post-judgment order only to the extent that it is separately appealable[2] and then only to the extent review is necessary to our decision in this case.

II. The Nature of Petitioners' Claims.
Petitioners purport to challenge the Ordinance both on its face and as applied to them. The trial court apparently agreed with petitioners' characterization of their claims, at least initially. In its first order, in which it denied the petition, the court treated petitioners' facial challenges separately from their as-applied claims. But in its post-judgment order denying petitioners' motion to vacate the judgment, the court remarked that Travis's challenges to the Ordinanceother than those that allege an unconstitutional taking of property"are facial rather than `as applied' claims, regardless of the semantics utilized in framing these claims."
In our view, neither the petition nor its supporting documentation states any as-applied challenge to the Ordinance. Instead, all of petitioners' claims are facial.
"A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual. [Citation.]" (Tobe v. City of Santa Ana (1995) *722 9 Cal.4th 1069, 1084, 40 Cal.Rptr.2d 402, 892 P.2d 1145.) By contrast, an as-applied challenge "contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right." (Ibid.) The same distinction applies in the context of a constitutional takings claim: "A facial challenge involves `a claim that the mere enactment of a statute constitutes a taking,' while an as-applied challenge involves `a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation.' [Citation.]" (Levald, Inc. v. City of Palm Desert (9th Cir.1993) 998 F.2d 680, 686, quoting Keystone Bituminous Coal Ass'n v. DeBenedictis (1987) 480 U.S. 470, 494, 107 S.Ct. 1232, 94 L.Ed.2d 472. See also, Yee v. Escondido (1992) 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153; Hensler v. City of Glendale (1994) 8 Cal.4th 1, 21, 32 Cal.Rptr.2d 244, 876 P.2d 1043 (Hensler): "An otherwise valid statute or regulation may be invalid as applied to a particular property if compensation is not paid.")
Against that measure, we do not discern any as-applied claims here. The principal thrust of the petitioners' complaint is that "the County is exceeding its lawful authority by imposing certain occupancy restrictions, rent controls, and deed restrictions as mandatory conditions upon granting development of second dwelling units within residential zones...." Petitioners do not contend that the conditions attached to their particular second unit permit applications differed in any way from the conditions imposed on other applicants for such permits. To the contrary, the petition names 103 "Doe" petitioners, identified as the owners of 103 other parcels of property in the County subject to the same property restrictions as a result of obtaining second unit permits under the Ordinance.
Nowhere in their petition do the Sokolows or Travis assert that the Ordinance was applied differently to their particular properties than to other similarly situated properties. Nor do petitioners claim that the Ordinance has a disparate fiscal effect on them as compared with other similarly situated property owners. Given that state of affairs, we conclude that the petition fails to assert any as-applied claims; rather, it states only facial challenges to the Ordinance. (See, Tobe v. City of Santa Ana, supra, 9 Cal.4th at p. 1083, 40 Cal.Rptr.2d 402, 892 P.2d 1145: The court found no as-applied challenge, since "plaintiffs did not clearly allege such a challenge or seek relief from specific allegedly impermissible applications of the ordinance." Cf., Santa Monica Beach, Ltd. v. Superior Court (1999) 19 Cal.4th 952, 961, 81 Cal. Rptr.2d 93, 968 P.2d 993: Without deciding whether plaintiff had stated an as-applied challenge, the Court recognized that its "unusual claim bears resemblance in a number of respects to a facial challengeit seeks to invalidate the Rent Control Law, not merely its application against one landlord.")
In their opening brief on appeal, petitioners acknowledge: "Under other circumstances, a challenge which attacks an ordinance itself, when applied uniformly to all parcels, would be facial...." But petitioners seek to distinguish their claims on the ground that the Ordinance has been preempted, arguing: "Each instance of its unlawful enforcement by applying the preempted conditions to a particular parcel is an as-applied cause of action...." We reject that argument. As discussed above, the petition challenges the validity of the Ordinance as applied to all property owners, not its particular application to petitioners. Petitioners' assertions of preemption *723 do not operate to transform the basic nature of their claims from facial to as-applied. Petitioners' essential claim is that the Ordinance is invalid no matter how, when, or to whom it is applied, because state law preempts it. That claim "does not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated...." (Yee v. Escondido, supra, 503 U.S. at p. 534, 112 S.Ct. 1522.) Petitioners' claims, therefore, are facial only. (Ibid.)
The process of characterizing petitioners' claims is not a matter of mere semantics; the distinction between facial and as-applied challenges is an important one. (See, Levald, Inc. v. City of Palm Desert, supra, 998 F.2d at p. 686.) "Among other things, each raises different ripeness and statute of limitations issues." (Ibid.)

III. Statutes of Limitation.

A. In General.
"The purpose of any limitations statute is to require `diligent prosecution of known claims thereby providing necessary finality and predictability in legal affairs, and ensuring that claims will be resolved while the evidence bearing on the issues is reasonably available and fresh.' [Citations.]" (Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd. (1985) 39 Cal.3d 57, 62, 216 Cal.Rptr. 115, 702 P.2d 197. See also, Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 395, 87 Cal.Rptr.2d 453, 981 P.2d 79.)
"To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the `gravamen' of the cause of action. [Citations.] `[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.' [Citation.]" (Hensler, supra, 8 Cal.4th at pp. 22-23, 32 Cal.Rptr.2d 244, 876 P.2d 1043. See generally, Schwing, Cal. Affirmative Defenses (2d ed.1995) § 25:1, pp. 12-13.)
Whatever statute applies, the limitation period commences when the cause of action accrues. (Norgart v. Upjohn Co., supra, 21 Cal.4th at p. 387, 87 Cal.Rptr.2d 453, 981 P.2d 79. See generally, Schwing, Cal. Affirmative Defenses, supra, § 25:3, pp. 17-22.) A cause of action accrues when "`"the party owning it is entitled to begin and prosecute an action thereon."' [Citation.]" (Romano v. Rockwell Internal, Inc. (1996) 14 Cal.4th 479, 487, 59 Cal.Rptr.2d 20, 926 P.2d 1114. Accord, Howard Jarvis Taxpayers Assn. v. City of La Habra (2001) 25 Cal.4th 809, 815, 107 Cal.Rptr.2d 369, 23 P.3d 601.) Thus, in the usual case, a cause of action accrues when it is "complete with all of its elements [citations]," which typically include a wrongful act, causation, and injury. (Norgart v. Upjohn Co., supra, 21 Cal.4th at p. 397, 87 Cal.Rptr.2d 453, 981 P.2d 79, fn. omitted.) "An exception to the general rule for defining the accrual of a cause of actionindeed, the `most important' one is the discovery rule. [Citation.] ... It postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (Ibid. See also, Utility Cost Management v. Indian Wells Valley Water District (2001) 26 Cal.4th 1185, 1197, 114 Cal.Rptr.2d 459, 36 P.3d 2.) But "it is the discovery of facts, not their legal significance, that starts the statute. [Citation.]" (Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103, 1113, 245 Cal. Rptr. 658, 751 P.2d 923.) Thus, "failure to discover a cause of action ... does not excuse an untimely filing unless the defendant has fraudulently concealed the cause of action from the plaintiff. [Citations.]" *724 (Kupka v. Board of Administration (1981) 122 Cal.App.3d 791, 795, 176 Cal.Rptr. 214.)

B. The Limitation Period In This Case.
Determining the applicable statute of limitations in land use cases can prove challenging, since "the statutes sometimes overlap or conflict, or are simply confusing." (Curtin, Cal. Land Use and Planning Law (22nd ed.2002) p. 379.) The applicable statute may be found in the laws governing the particular agency; alternatively, it may be determined by reference to the particular type of decision the agency rendered. (Id. at pp. 379-382; see also, Schwing, Cal. Affirmative Defenses, supra, § 25:31, pp. 87-90.)

1. What Statute Applies?
The parties disagree about what statute governs here. Petitioners offer several alternative contentions concerning the applicable limitation period in this case, ranging from one year to three years to five years. The California Apartment Association, appearing as a micus curiae on this appeal, offers the view that there is no limitations statute in this case. Finally, the County contends for the 90-day statute of limitations that governs many land use decisions.
We discuss each contention in turn, proceeding from the shortest asserted limitation period.
The 90-day statute of limitations. In ruling on the petitioners' facial challenges to the Ordinance, the trial court applied the 90-day statute of limitations found in Government Code, section 65009, subdivision (c).[3] In doing so, the trial court expressly relied on Hensler, supra, 8 Cal.4th 1, 32 Cal.Rptr.2d 244, 876 P.2d 1043.
In Hensler, the California Supreme Court concluded that section 65009 is the proper limitations statute where a party's "challenge is to the facial validity of a land-use regulation...." (Hensler, supra, 8 Cal.4th at p. 22, 32 Cal.Rptr.2d 244, 876 P.2d 1043.) The plaintiff in Hensler challenged a city ordinance adopted pursuant to the Subdivision Map Act, claiming it effected an unconstitutional taking of his real property. (Id. at pp. 7-8, 32 Cal. Rptr.2d 244, 876 P.2d 1043.) Our high court determined that all of the plaintiffs claims were time-barred. (Id. at p. 22, 32 Cal.Rptr.2d 244, 876 P.2d 1043.) First, the plaintiffs as-applied claims were barred by section 66499.37, which contains a 90-day statute of limitations for proceedings involving the Subdivision Map Act. Additionally, as noted above, our high court also determined that the plaintiffs facial challenges to the ordinance were subject to section 65009, which then provided for a 120-day limitation period.[4] (Ibid.)
The purpose of such "relatively short limitation periods for ... actions which challenge the validity of land use statutes, regulations, and/or decisions, is to permit and promote sound fiscal planning by state and local governmental entities." (Hensler, supra, 8 Cal.4th at p. 27, 32 *725 Cal.Rptr.2d 244, 876 P.2d 1043.) More specifically, with respect to section 65009, its purpose is "to provide certainty for property owners and local governments regarding decisions made pursuant to this division." (§ 65009, subd. (a)(3). See, Wagner v. City of South Pasadena (2000) 78 Cal.App.4th 943, 948-949, 93 Cal. Rptr.2d 91; Garat v. City of Riverside (1991) 2 Cal.App.4th 259, 289, 3 Cal. Rptr.2d 504, disapproved on other grounds in Morehart v. County of Santa Barbara (1994) 7 Cal.4th 725, 743, fn. 11, 29 Cal. Rptr.2d 804, 872 P.2d 143.) "To carry out this express intent, the Legislature used expansive language in former section 65009, subdivision (c), to define the kinds of challenges to decisions which must be filed and served within 120 days. In choosing this comprehensive phraseology, the Legislature foreclosed any and all attacks on the validity of such decisions unless timely brought and served within the limits set out in the statute." (Gonzalez v. County of Tulare (1998) 65 Cal.App.4th 777, 786, 76 Cal.Rptr.2d 707; italics added. Accord, Freeman v. City of Beverly Hills (1994) 27 Cal.App.4th 892, 897, 32 Cal. Rptr.2d 731. Cf., Hensler, supra, 8 Cal.4th at p. 25, 32 Cal.Rptr.2d 244, 876 P.2d 1043 [noting similar "broad language" in section 66499.37]; Utility Cost Management v. Indian Wells Valley Water District, supra, 26 Cal.4th at p. 1191, 114 Cal.Rptr.2d 459, 36 P.3d 2 [identical language in § 66022 broadens its applicability].)
In its current iteration, section 65009 continues the same broad language. Thus, those seeking to "attack, review, set aside, void or annul the decision of a legislative body to adopt or amend a zoning ordinance" must commence legal action within 90 days or not at all. (§ 65009, subd. (c)(1)(B); italics added.) "Upon the expiration of the time limits provided for in this section, all persons are barred from any further action or proceeding." (§ 65009, subd. (e); italics added.)
The expansive statutory language, when taken together with our high court's determination that facial challenges to land use ordinances are subject to section 65009, subdivision (c), compels the conclusion that that statute applies to petitioners' claims in this case.
Petitioners resist that conclusion on several grounds.
First, petitioners contend that the statute, by its express terms, does not apply to their facial claims of invalidity. Although they concede that section 65009, subdivision (c), governs challenges to local decisions adopting or amending zoning ordinances, petitioners insist that their action is not such a challenge. They instead characterize their petition as an attack on the continued maintenance and enforcement of the Ordinance after preemption. We reject that characterization. The petition alleges that the Ordinance itself "unlawfully discriminates," that it "unlawfully restricts" property rights, and that it contains "unlawful rent control and occupancy requirements." Among other things, the petition seeks a writ commanding the County to "remove unlawful rent control and occupancy requirements." An action that "specifically seeks to declare the Ordinance `illegal' and `invalid' and to enjoin its enforcement" is a challenge to the Ordinance itself, regardless of semantics. (Howard Jarvis Taxpayers Assn. v. City of Los Angeles (2000) 79 Cal.App.4th 242, 247, 93 Cal.Rptr.2d 742.) In this case, petitioners' action is an attack on the validity of the Ordinance, as adopted and subsequently amended. (Cf., Hensler, supra, 8 Cal.4th at p. 7, 32 Cal.Rptr.2d 244, 876 P.2d 1043 ["A complaint in inverse condemnation, even one which does not expressly attack the validity of the ordinance *726 or its application, and seeks only compensation for an alleged taking, must be deemed a challenge to the local action"]; Utility Cost Management v. Indian Wells Valley Water District, supra, 26 Cal.4th at p. 1194, 114 Cal.Rptr.2d 459, 36 P.3d 2 ["The clear gravamen of [appellant's] action is an attack on the validity of the ordinances ..."].) Such challenges are governed by the limitation period of section 65009. (Howard Jarvis Taxpayers Assn. v. City of Los Angeles, supra, 79 Cal.App.4th at p. 247, 93 Cal.Rptr.2d 742.)
In a related vein, petitioners assert that the County made no "decision," as required for application of the statute. Petitioners point out that the statute, by its express terms, applies to a local legislative body's decision to adopt or amend a zoning ordinance. (§ 65009, subd. (c)(1)(B).) They argue that the act of maintaining and enforcing a preempted ordinance does not constitute a "decision" on the County's part. Whatever its intrinsic merits, petitioners' argument misses the mark in this case. The Ordinance at issue here has been amended on at least two occasions since the Costa-Hawkins Rental Housing Act was first adopted, once in 1997 and once in 1998. By amending the Ordinance after its claimed preemption, the County made the necessary predicate "decision" for application of the statute.
Finally, petitioners argue that section 65009 does not apply here because the Ordinance, which first took effect in 1982, predates the statute, which explicitly governs decisions made on or after January 1, 1984. (See § 65009, subd. (h).) We reject petitioners' argument for several reasons. For one thing, the statute itself explicitly covers any "proceedings, acts, or determinations taken, done, or made prior to any" challenged decision. (§ 65009, subd. (c)(1)(F).) For another thing, it appears that at least two other courts have applied section 65009 to local decisions predating the statute. (See, A Local & Regional Monitor v. City of Los Angeles (1993) 12 Cal.App.4th 1773, 1816, 16 Cal.Rptr.2d 358 [without discussing subd. (h), the court held that former § 65009, subd. (c) barred a 1990 attack on 1974 general plan amendments]; Garat v. City of Riverside, supra, 2 Cal.App.4th at p. 289, 3 Cal.Rptr.2d 504 [without discussing subd. (h), the court held that former § 65009, subd. (c) barred a 1988 challenge to a 1969 general plan, except as to plan amendments enacted within 120 days prior to suit]. Cf., Hawkins v. County of Marin (1976) 54 Cal. App.3d 586, 593-594, 126 Cal.Rptr. 754 [the court held that a 1974 challenge to a 1972 permit, based in part on its alleged inconsistency with the general plan, was timely under former § 65907 when brought within 180 days of the effective date of the statute requiring consistency].) Furthermore, to accept petitioners' argument is to do violence to the clear legislative intent behind the short limitation period, which is to provide a "`quick and certain finality'" to zoning decisions. (Garat v. City of Riverside, supra, 2 Cal. App.4th at p. 289, 3 Cal.Rptr.2d 504; accord, Wagner v. City of South Pasadena, supra, 78 Cal.App.4th at pp. 948-949, 93 Cal.Rptr.2d 91.) Finally, the Ordinance at issue here has been amended since 1984, and petitioners seek to invalidate the Ordinance in its current iteration, as amended.
In short, notwithstanding petitioners' arguments against its application here, we conclude that section 65009, subdivision (c), governs petitioners' claims in this case in the absence of some other, more appropriate limitation period. Petitioners and amicus offer several alternatives, which we consider below.
The one-year statute of limitations. Petitioners assert that their petition was brought in support of affordable *727 housing, which qualifies it for a one-year limitation period under section 65009, subdivision (d).[5]
The trial court rejected that assertion. The court concluded that the petitioners did not satisfy any of the three requirements of the subdivision because: (1) the action was not in support of affordable housing; (2) the action did not concern any of the statutes specified in the subdivision; and (3) petitioners' pre-litigation notices were insufficient.
We agree with the trial court's determination that petitioners do not qualify for the longer limitation period of section 65009, subdivision (d). The extended limitation period is available only to parties who meet all three requirements set forth in that subdivision. First, the action must be brought in support of affordable housing. (§ 65009, subd. (d)(1).) In addition, the action must be brought with respect to certain specified local decisions. (§ 65009, subd. (d)(2).) Finally, prior to commencing an action in support of affordable housing, notice must be given that specifies the deficiencies of the general plan, specific plan, or zoning ordinance. (§ 65009, subd. (d).)
As to the first statutory requirement, we find nothing in the petition that suggests it was brought in support of affordable housing. Despite the absence of any indication in the petition of such a purpose, petitioners argue here, as they did below, that the relief they seek would promote affordable housing. Petitioners' argument is based on their assertion that the challenged occupancy and rent restrictions in the Ordinance actually discourage the long-term development of affordable housing. For its part, the County urges that petitioners' argument is contradicted by their goal of removing the very restrictions that currently make second units affordable. Ultimately, the question of whether rent restrictions encourage or discourage the development of affordable housing is a political one, which is properly left to the appropriate elected governing body. "`That rent control may unduly disadvantage others, or that it may exert adverse long-term effects on the housing market, are matters for political argument and resolution....'" (Santa Monica *728 Beach, Ltd. v. Superior Court, supra, 19 Cal.4th at p. 970, 81 Cal.Rptr.2d 93, 968 P.2d 993, quoting Schnuck v. City of Santa Monica (9th Cir.1991) 935 F.2d 171, 175.)
Petitioners also fail to satisfy the second prong of the statute, which requires that the proceeding be "brought with respect to actions taken pursuant to" certain, specifically identified statutes. (§ 65009, subd. (d)(2).) The listed statutes deal with such subjects as regional housing needs, low-income housing, and the housing element of the local general plan. (See, e.g., §§ 65580 et seq. [housing element]; 65863.6 [regional housing needs]; 65913 et seq. [least-cost housing]; 65915 [density bonuses for low-income housing]). As petitioners acknowledge, they did not specifically challenge the housing element of the County's general plan in their petition. Nor have petitioners identified any other specific statutory basis qualifying their petition for the longer limitation period in section 65009, subdivision (d). Petitioners nevertheless claim that they satisfy this prong of the subdivision because the Ordinance they are attacking itself purports to support affordable housing. That claim is without merit. First, the Ordinance was not adopted "pursuant to" any of the statutes specifically listed in section 65009, subdivision (d)(2). More importantly, were we to accept petitioners' claim, we would be standing the subdivision on its head, since its clear aim is to support affordable housing, not to defeat it.
With regard to the third requirement of the subdivision, we agree with the trial court's determination that petitioners did not give the required statutory notice. In their pre-litigation communication with the County, petitioners cited only one deficiency in the challenged zoning ordinance:its purported violation of the Costa-Hawkins Rental Housing Act. That particular claimed deficiency does not relate to the subject of the subdivision, which is affordable housing. We fail to see how petitioners' reference to a deficiency unrelated to affordable housing can constitute adequate notice under the provision. Petitioners nevertheless urge that the subdivision's "broad language ... allows wide latitude" in satisfying its notice requirements. We disagree. For one thing, the notice provisions of the subdivision require litigants to "specify" particular complaints related to affordable housing before suing. Furthermore, the subdivision as a whole most certainly is not "broad;" it has only limited application to specified actions brought in support of affordable housing. Finally, the subdivision must be viewed in the context of the section of which it is a part. Subdivision (d) is a narrowly drawn exception to the short limitation period of section 65009, whose clear purpose is to hasten the commencement of actions challenging local zoning decisions. (See, e.g., § 65009, subds. (a), (e), (g).)
In sum, the longer limitation period allowed in section 65009, subdivision (d) is available only to litigants who bring specified actions in support of affordable housing after giving the requisite notice. As the record in this case makes clear, petitioners do not qualify for the extended one-year statute provided by section 65009, subdivision (d).
The 3-year statute of limitations. Petitioners next contend that their suit is an action on a statutory liability, which is subject to a three-year limitation period. (See Code Civ. Proc., § 338, subd. (a).) We disagree.
It is well-settled that "where, as here, a specific limitations period applies, the more general period codified in Code of Civil Procedure section 338 is inapplicable." (Howard Jarvis Taxpayers Assn. v. *729 City of Los Angeles, supra, 79 Cal.App.4th at p. 248, 93 Cal.Rptr.2d 742. Accord, Hensler, supra, 8 Cal.4th at p. 22, 32 Cal. Rptr.2d 244, 876 P.2d 1043. See also, Collection Bureau of San Jose v. Rumsey (2000) 24 Cal.4th 301, 310, 99 Cal.Rptr.2d 792, 6 P.3d 713.) As we explained above, the specific limitation period of section 65009 applies to cases, such as this, in which the facial validity of a land use ordinance is put at issue. (See, Howard Jarvis Taxpayers Assn. v. City of Los Angeles, supra, 79 Cal.App.4th at p. 248, 93 Cal.Rptr.2d 742 [rejecting Code Civ. Proc., § 338 and applying § 65009]. See also, Hensler, supra, 8 Cal.4th at p. 22, 32 Cal.Rptr.2d 244, 876 P.2d 1043 [rejecting Code Civ. Proc., § 338 and applying § 66499.37]; Ching v. San Francisco Bd. of Permit Appeals (1998) 60 Cal.App.4th 888, 892, 70 Cal.Rptr.2d 700 [rejecting Code Civ. Proc., § 338 and applying former § 65907]. Compare, Venice Town Council, Inc. v. City of Los Angeles (1996) 47 Cal.App.4th 1547, 1568, 1567, 55 Cal. Rptr.2d 465 [rejecting former § 65907 and applying Code Civ. Proc., § 338 where petitioners did not "challenge any specific decision under the Mello act" but instead sought "review of the City's overall policies in implementing" that statute and further sought "to correct the City's interpretation of its responsibilities under that statute"].)
The five-year statute of limitations. Petitioners also contend that a five-year limitation period applies to their claims for real property takings. (See, Code Civ. Proc., §§ 318, 319.)
We reject that contention, for the same reason. As we explained above, general limitation statutes apply "only if no `different limitation is prescribed by statute.' (Code Civ. Proc., § 312.)" (Hensler, supra, 8 Cal.4th at p. 22, 32 Cal.Rptr.2d 244, 876 P.2d 1043.) As we also explained above, section 65009 prescribes a "`different limitation'" in cases like this one, where the facial validity of a land use ordinance is at issue. (See, Howard Jarvis Taxpayers Assn. v. City of Los Angeles, supra, 79 Cal.App.4th at p. 248, 93 Cal.Rptr.2d 742. See also, Hensler, supra, 8 Cal.4th at pp. 22, 24, 32 Cal.Rptr.2d 244, 876 P.2d 1043 [rejecting Code Civ. Proc., §§ 318, 319 and applying § 66499.37].)
We recognize that, over the years, a number of California courts have applied the five-year real-property limitation statute to claims of unconstitutional property takings. (See, e.g., Baker v. Burbank-Glendale-Pasadena Airport Authority (1985) 39 Cal.3d 862, 867-868, 218 Cal. Rptr. 293, 705 P.2d 866, which relied on Frustuck v. City of Fairfax (1963) 212 Cal.App.2d 345, 374, 28 Cal.Rptr. 357; Garden Water Corp. v. Fambrough (1966) 245 Cal.App.2d 324, 327-328, 53 Cal.Rptr. 862, which also relied on Frustuck; Sandpiper Mobile Village v. City of Carpinteria (1992) 10 Cal.App.4th 542, 549, 12 Cal. Rptr.2d 623, which relied on Garden Water.)
But there are at least two reasons not to follow those precedents here. First, for the most part, they are factually distinguishable. With one exception,[6] the cited *730 cases were "actions based on physical invasion of the property." (Hensler, supra, 8 Cal.4th at p. 24, 32 Cal.Rptr.2d 244, 876 P.2d 1043, referring to Baker and Frustuck. See also, Garden Water Corp. v. Fambrough, supra, 245 Cal.App.2d at p. 328, 53 Cal.Rptr. 862.) By contrast, this case alleges a regulatory taking. The law distinguishes between physical and regulatory taking claims. (See, e.g., Yee v. Escondido, supra, 503 U.S. at pp. 527-532, 112 S.Ct. 1522; Hensler, supra, 8 Cal.4th at p. 9, 32 Cal.Rptr.2d 244, 876 P.2d 1043.) Noting that the case before it involved a regulatory takings claim, our state's high court stated: "There is no basis for a conclusion that Code of Civil Procedure sections 318[or] 319 ... govern this action, therefore. The complaint does not allege facts to establish that title to the land was affected by enactment of the ordinance or that a physical invasion of the land took place." (Hensler, supra, 8 Cal.4th at p. 24, 32 Cal.Rptr.2d 244, 876 P.2d 1043.) In short, Frustuck and its progeny are distinguishable from this case because they involved physical takings. Quite apart from that distinction, there is a second, very potent reason not to follow that line of cases: their continued vitality is doubtful. As our high court recognized, "since Frustuck was decided the Legislature has adopted ... section 65009, a 120-day statute of limitations specific to challenges to the facial validity of zoning ordinances." (Hensler, supra, 8 Cal.4th at p. 24, 32 Cal.Rptr.2d 244, 876 P.2d 1043, fn. omitted.) As we explained above, this more specific statute of limitations governs in this case.
For these reasons, we conclude that the five-year statute of limitations governing real property actions does not apply in this case.
No limitation period. The California Apartment Association, as amicus curiae, asserts that there is no time limitation for challenging the Ordinance because it is wholly void, having been preempted by state law. According to amicus: "Since there essentially is no ordinance, there is no applicable statute of limitations ...."
Preliminarily, we observe that petitioners did not raise that argument on their own behalf in the trial court. As a general rule, reviewing courts consider only questions that were presented in the trial court. (See, e.g., A Local & Regional Monitor v. City of Los Angeles, supra, 12 Cal.App.4th at p. 1804, 16 Cal.Rptr.2d 358.) But there is an exception when questions of pure law are raised on appeal by undisputed facts. (Id. at p. 1804, fn. 13, 16 Cal.Rptr.2d 358; Hale v. Morgan (1978) 22 Cal.3d 388, 394, 149 Cal.Rptr. 375, 584 P.2d 512.) In this case, the relevant facts are undisputed and the issue is one of law. Furthermore, because the limitation period was a central disputed contention below, we consider it appropriate to address amicus's appellate argument here. (See, e.g., Hawkins v. County of Marin, supra, 54 Cal.App.3d at p. 593, 126 Cal.Rptr. 754.)
*731 That argument starts with the unassailable premise that a local ordinance is invalid if preempted by state statute. As has been stated in many cases: "`"Local legislation in conflict with general law is void...."' [Citations.]" (Morehart v. County of Santa Barbara, supra, 7 Cal.4th at p. 747, 29 Cal.Rptr.2d 804, 872 P.2d 143, and cases cited therein. Accord, Building Industry Assn. v. City of Oceanside (1994) 27 Cal.App.4th 744, 762, 33 Cal.Rptr.2d 137.) But those cases do not discuss what time limits, if any, apply to a party seeking a judicial determination that an ordinance is preempted and thus void.[7]
Though we are unaware of any case that resolves the issue of the applicable limitation period in a preemption challenge, several published decisions address the timeliness of claims of invalidity brought in two other land-use contexts. One set of decisions concerns ordinances that conflict with local general plans while another group of cases involves void conditional use permits. We examine those decisions now, starting with the general plan cases.
A local government's general plan is "`"a constitution" for future development' [citation] located at the top of `the hierarchy of local government law regulating land use.'" (DeVita v. County of Napa (1995) 9 Cal.4th 763, 773, 38 Cal.Rptr.2d 699, 889 P.2d 1019.) A zoning ordinance is subordinate and must be consistent with the general plan. (§ 65860.) "A zoning ordinance that conflicts with a general plan is invalid at the time it is passed. [Citations.] The court does not invalidate the ordinance. It does no more than determine the existence of the conflict. It is the preemptive effect of the controlling state statute, the Planning and Zoning Law, which invalidates the ordinance. [¶] A void statute or ordinance cannot be given effect." (Lesher Communications, Inc. v. City of Walnut Creek (1990) 52 Cal.3d 531, 544, 277 Cal.Rptr. 1, 802 P.2d 317, italics added.)
Although an inconsistent ordinance is void when adopted, its invalidity nevertheless must be determined judicially in an appropriate legal action. And any such legal action is governed by the appropriate statute of limitations. (Gonzalez v. County of Tulare, supra, 65 Cal.App.4th at pp. 785-791, 76 Cal.Rptr.2d 707 [held: party claiming zoning ordinance was inconsistent with general plan required to file action within 90-day limitation period of § 65860, subd. (b) and to serve it within time limits of former § 65009, subd. (c), then 120 days].)
We are persuaded by well-reasoned precedent that the same holds true with respect to challenges to conditional use permits that are claimed to be void. (See, e.g., Ching v. San Francisco Bd. of Permit Appeals, supra, 60 Cal.App.4th at pp. 891-892, 70 Cal.Rptr.2d 700 [challenge to conditional use permit barred by former section 65907]; Hawkins v. County of Marin, supra, 54 Cal.App.3d at pp. 592-593, 126 Cal.Rptr. 754 [same]); (Gonzalez v. County of Tulare, supra, 65 Cal.App.4th at pp. 791-792, 76 Cal.Rptr.2d 707 [same].) In the Ching case, the plaintiff challenged a conditional use permit on the ground that *732 a member of the board that granted it had an illegal conflict of interest in violation of California's Political Reform Act. (Ching v. San Francisco Bd. of Permit Appeals, supra, 60 Cal.App.4th at p. 891, 70 Cal. Rptr.2d 700.) The plaintiff claimed that the permit was null and void as a result. (Ibid.) At trial, the plaintiff had maintained that her challenge was timely under the three-year limitation period for statutory liability claims; on appeal, she urged a four-year statute of limitations under the Political Reform Act. (Id. at p. 892, 70 Cal.Rptr.2d 700.) The court rejected both of the longer asserted limitation periods and instead applied former section 65907, which contained a 90-day limitation period for challenging conditional use permits. (Ching v. San Francisco Bd. of Permit Appeals, supra, 60 Cal.App.4th at pp. 891 894, 70 Cal.Rptr.2d 700.) As the court observed, "former section 65907 `contains no exceptions,' and uses `unqualified language' manifesting a plain intent on the part of the Legislature `to limit the time to seek review' of an agency decision." (Id. at pp. 894-895, 70 Cal.Rptr.2d 700, quoting California Standardbred Sires Stakes Com., Inc. v. California Horse Racing Bd. (1991) 231 Cal.App.3d 751, 757, 282 Cal. Rptr. 656.) Similarly, in the Hawkins case, the court was faced with a claim that a conditional use permit conflicted with county ordinances and state statutes. (Hawkins v. County of Marin, supra, 54 Cal.App.3d at pp. 592-593, 126 Cal.Rptr. 754.) Notwithstanding plaintiffs' assertion that the permit was null and void, the court found the claims barred by former section 65907, which then had a limitation period of 180 days. (Ibid. Accord, Gonzalez v. County of Tulare, supra, 65 Cal. App.4th at pp. 791-792, 76 Cal.Rptr.2d 707.)
So far as we can determine, only one California court has held otherwise. (See, Anza Parking Corp. v. City of Burlingame (1987) 195 Cal.App.3d 855, 241 Cal.Rptr. 175.) In Anza, the court concluded that a permit condition was void because it was not reasonably related to the use of the property, in contravention of section 65909. (Anza Parking Corp. v. City of Burlingame, supra, 195 Cal.App.3d at p. 860, 241 Cal.Rptr. 175.) Rebuffing plaintiffs argument that the City's defense of the permit was time-barred, the court said this: "Surely a void and unlawful, or unconstitutional, use condition will not reasonably be perpetuated for failure of someone to comply with [the applicable statute of limitations, former] section 65907." (Id. at p. 861, 241 Cal.Rptr. 175.) We note that Anza has been roundly criticized. As one court put it: "The [Anza] opinion, which in effect holds there is no statute of limitations for claims that a conditional use permit is void, stands on its head the Legislature's intent to ensure the quick resolution of challenges to local planning and zoning decisions. Three other published opinions apparently have misgivings about Anza; they do their best to distance themselves from it. [Citations.]" (Gonzalez v. County of Tulare, supra, 65 Cal.App.4th at p. 790, 76 Cal.Rptr.2d 707.)
We, too, have misgivings about Anza. In our opinion, Ching, Hawkins, and Gonzalez express the better view. Consistent with legislative intent, the principle underlying those decisions should be applied in this case, too.
The Legislature has enacted short statutes of limitation for attacks on conditional use permits, and for challenges to zoning ordinances that conflict with the governing general plan, as well as for attacks on the adoption or amendment of zoning ordinances. (See, §§ 65009, subd. (c)(1)(E); 65860, subd. (b); 65009, subd. (c)(1)(B).) See generally, Curtin, Cal. Land Use and Planning Law, supra, p. 379: ("Statutes of limitation in the land use area are unusually *733 short....") From the express language of those statutes, and from the overwhelming weight of the case law interpreting them, it is clear that the Legislature intended that local land use decisions would be reviewed quickly or not at all. "The Legislature intended to foreclose any and all challenges to the validity of zoning ordinances unless they were filed promptly." (Freeman v. City of Beverly Hills, supra, 27 Cal.App.4th at p. 897, 32 Cal. Rptr.2d 731, italics added [construing § 65009, subd. (c)].)
We see no reason to treat a voidness claim based on preemption any differently than a voidness claim that results either from an invalid permit condition or from a zoning ordinance's conflict with the general plan.
In our view, the statutory reference to "any and all challenges" is broad enough to encompass petitioners' claims that the Ordinance is invalid as a result of preemption. We therefore conclude that this action is subject to the 90-day limitation period contained in section 65009, subdivision (c).

2. When Did the Cause of Action Accrue?
Having concluded that this action is governed by the limitation period contained in section 65009, subdivision (c), we next determine when the 90-day statutory period commenced running.
"The determination of when the statute of limitations begins to accrue depends on the gravamen of [the plaintiffs] claims. [Citation.]" (McBrearty v. City of Brawley (1997) 59 Cal.App.4th 1441, 1446, 69 Cal.Rptr.2d 862, disapproved on another ground in Howard Jarvis Taxpayers Assn. v. City of La Habra, supra, 25 Cal.4th at p. 817, fn. 2, 107 Cal.Rptr.2d 369, 23 P.3d 601.) In this case, the gravamen of petitioners' complaint is their assertion that the Ordinance is invalid on its face because it has been preempted by the Costa-Hawkins Rental Housing Act.[8]
Our high court recently stated the accrual rule for actions such as petitioners' that test the facial validity of land use ordinances: "If the challenge is to the facial validity of a land-use regulation, the statute of limitations runs from the date the statute becomes effective." (Hensler, supra, 8 Cal.4th at p. 22, 32 Cal.Rptr.2d 244, 876 P.2d 1043.) But according to petitioners, the Ordinance could not be challenged at the time of its adoption, since it was not rendered invalid until years later, upon enactment of the preempting statute. In other words, petitioners' claims of invalidity "derived from events occurring after the passage" of the *734 challenged local legislation. (See, Santa Monica Beach, Ltd. v. Superior Court, supra, 19 Cal.4th at p. 961, 81 Cal.Rptr.2d 93, 968 P.2d 993, original italics.)
Given the sequence of events in this case, strict application of the accrual rule announced in Hensler would mean that petitioners' claims were barred before they ever arose. There may be instances in which, as a matter of legislative intent, it is proper to entirely foreclose judicial review of land use decisions. (See, e.g., Garat v. City of Riverside, supra, 2 Cal. App.4th at p. 289, 3 Cal.Rptr.2d 504, fn. omitted): "We acknowledge that our interpretation of section 65009, subdivision (c), precludes the possibility of an action being brought to challenge the validity of a general plan on the ground of `inadequacy' in the absence of a `triggering event' such as the adoption or amendment of that plan. However, we find that this limitation on actions challenging general plans is entirely consistent with the expressed legislative desire for finality and certainty set forth in [the statute]."
But we do not believe that this is a case in which judicial review should be foreclosed entirely. In our view, the clear legislative purpose underlying the statute is to hasten judicial review of local land use decisions, not to thwart it entirely. We therefore decline to apply to this case the bright-line accrual rule announced in Hensler.
Instead, we employ the usual, common law rule for determining when actions accrue. "It is the general rule that a cause of action accrues when a suit may be maintained thereon, and the statute of limitations then begins to run. [Citations.]" (Maguire v. Hibernia S. & L. Soc. (1944) 23 Cal.2d 719, 733, 146 P.2d 673. See also, Romano v. Rockwell Internat., Inc., supra, 14 Cal.4th at p. 487, 59 Cal.Rptr.2d 20, 926 P.2d 1114; Howard Jarvis Taxpayers Assn. v. City of La Habra, supra, 25 Cal.4th at p. 815, 107 Cal.Rptr.2d 369, 23 P.3d 601.) The California Supreme Court recently reiterated that rule, observing that "`[i]n ordinary ... actions, the statute of limitations ... begins to run upon the occurrence of the last element essential to the cause of action.'" (Norgart v. Upjohn Co., supra, 21 Cal.4th at p. 397, 87 Cal.Rptr.2d 453, 981 P.2d 79. Accord, Howard Jarvis Taxpayers Assn. v. City of La Habra, supra, 25 Cal.4th at p. 815, 107 Cal.Rptr.2d 369, 23 P.3d 601.)
The County argues that the last element essential to petitioners' action was enactment of the Costa-Hawkins Rental Housing Act, which petitioners assert preempted the Ordinance. While appealing, that argument overlooks a fundamental and explicit predicate of the governing statute of limitationsa local legislative decision. (§ 65009, subd. (c).) As we explained earlier, the County made the necessary predicate decision when it amended the Ordinance after its claimed preemption. The most recent amendment, made in March 1998, changed only the Ordinance's nomenclature and did not affect its operation in any way. (See, In re Trombley (1948) 31 Cal.2d 801, 806, 193 P.2d 734 [mere change in phraseology does not alter meaning].) Because it did not affect the challenged provisions in any way, the 1998 amendment did not trigger a limitations period for challenging the Ordinance. By contrast, however, the November 1997 amendment was substantive. Among other things, that amendment modified the occupancy restrictions, which are among the provisions challenged here. (Cf., Garat v. City of Riverside, supra, 2 Cal.App.4th at pp. 289-290, 3 Cal.Rptr.2d 504 [only those provisions affected by amendment are subject to challenge].)
In this case, then, we conclude that the statute of limitations was triggered by the *735 County's 1997 decision to substantively amend the Ordinance after passage of the Costa-Hawkins Rental Housing Act.
Resisting that conclusion, petitioners argue for continuous accrual. They assert that a new limitation period commences with each instance of illegal enforcement of the Ordinance. In support of that view, petitioners rely on Howard Jarvis Taxpayers Assn. v. City of La Habra, supra, 25 Cal.4th at pp. 818-825, 107 Cal.Rptr.2d 369, 23 P.3d 601. That case is distinguishable, however; thus, petitioners' reliance on it is misplaced. In that case, the city had enacted an ordinance that imposed a general tax without first obtaining the necessary approval of the electorate, in contravention of Proposition 62. (Id. at p. 813, 107 Cal.Rptr.2d 369, 23 P.3d 601.) In applying a continuous accrual rule, our high court concluded that the City's "continued imposition and collection [of the illegal tax] is an ongoing violation, upon which the limitations period begins anew with each collection." (Id. at p. 812, 107 Cal.Rptr.2d 369, 23 P.3d 601.) As the court observed: "That plaintiffs could have brought an action for declaratory judgment at the time of the Ordinance's enactment, before the City began actually collecting its tax, does not imply such an action was untimely because brought later, at a time when the City had collected the tax for some years and was continuing to do so." (Id. at p. 821, 107 Cal.Rptr.2d 369, 23 P.3d 601.) But the court expressly limited its ruling in that case, saying "we hold only that, where the three-year limitations period for actions on a liability created by statute (Code.Civ.Proc., § 338, subd. (a)) applies, and no other statute or constitutional rule provides differently, the validity of a tax measure may be challenged within the statutory period after any collection of the tax, regardless of whether more than three years have passed since the tax measure was adopted." (Id. at p. 825, 107 Cal.Rptr.2d 369, 23 P.3d 601.) In this case, by contrast, the three-year statute does not apply. Instead, the case before us is governed by a specific limitation statute, section 65009, subdivision (c). By its express terms, the limitation period in that statute commences with "the legislative body's decision." (§ 65009, subd. (c)(1).) That alone distinguishes this case from Howard Jarvis Taxpayers Assn. v. City of La Habra. (See, Utility Cost Management v. Indian Wells Valley Water District, supra, 26 Cal.4th at p. 1195, 114 Cal.Rptr.2d 459, 36 P.3d 2.) This is not a proper case for application of the continuous accrual rule.
This facial attack on the Ordinance is governed by the common law rule for accrual of actions. Under that rule, petitioners' cause of action accrued when the County made substantive amendments to the Ordinance in November 1997, and it was barred 90 days later. Because the petition was not filed within that period, it was untimely.

IV. Petitioners' Substantive Claims.
Petitioners' principal substantive challenge to the Ordinance is their contention that state law preempts it. Petitioners also assert the Ordinance improperly discriminates on the basis of age and that it effects an unconstitutional taking as a result of its invalidity.
But we need not and do not address the merits of petitioners' substantive claims, in light of our conclusion that those claims are all time-barred.

CONCLUSION
The gravamen of petitioners' complaint is that the Ordinance is unlawful because it is preempted. Petitioners' cause of action accrued with the local legislative decision to substantively amend the Ordinance after *736 the claimed preemption. Petitioners failed to bring their legal action within 90 days after it accrued, as required by the governing statute of limitations. Petitioners' substantive claims are thus time-barred and beyond our power to review.

DISPOSITION
The judgment is affirmed.
Each party to bear its own costs on appeal.
I CONCUR: O'FARRELL, J.[*]
BAMATTRE-MANOUKIAN, Acting P.J., Dissenting.
The majority concludes that a property owner is barred by a 90-day statute of limitations from challenging a local ordinance on the ground that it has been preempted by state law. While I agree with much of the well-reasoned opinion of the majority, I cannot accept the result that a local ordinance that may be void due to the preemptive effect of state law is rendered immune from challenge. I therefore respectfully dissent.
I would start with the premise, which the majority agrees is "unassailable," that under the doctrine of preemption where there is a conflict between state and local law, the local law is void and cannot be enforced. (Sherwin-Williams Co. v. City of Los Angeles (1993) 4 Cal.4th 893, 894, 16 Cal.Rptr.2d 215, 844 P.2d 534.) This is true whether the local ordinance is passed after the state law or prior to it. "In either case the result is the same, the local law has no effective force." (Nat. Milk etc. Assn. v. City etc. of S.F. (1942) 20 Cal.2d 101, 108, 124 P.2d 25; see also Monterey Oil Co. v. City Court (1953) 120 Cal.App.2d 31, 36, 260 P.2d 846.)
The preemption doctrine is constitutionally based. It derives from article XI, section 7 of the California Constitution, which provides that "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Italics added.) California courts have uniformly interpreted this constitutional provision to mean that local ordinances that conflict with state law "cannot be given effect." (Lesher Communications, Inc. v. City of Walnut Creek (1990) 52 Cal.3d 531, 544, 277 Cal.Rptr. 1, 802 P.2d 317; Morehart v. County of Santa Barbara (1994) 7 Cal.4th 725, 747, 29 Cal. Rptr.2d 804, 872 P.2d 143.)
The rules of preemption are designed to ensure uniformity of law throughout the state on matters of statewide concern. They apply with particular force to counties, as opposed to cities, because counties are political subdivisions of the state and are charged with administering the general policies of state government. (County of Marin v. Superior Court (1960) 53 Cal.2d 633, 638-639, 2 Cal.Rptr. 758, 349 P.2d 526.) The doctrine is thus critical to the orderly administration of justice statewide: If counties were permitted to adopt and enforce ordinances conflicting with state law, chaos would result as state law would have different meaning and effect depending on the location of its application.
The county ordinance here, first enacted in 1982, places restrictions on rent and occupancy of newly constructed second units on residential property "for the life of the unit." (Santa Cruz County Code, § 13.10.681, subd. (e)(1).) Occupancy is restricted to low-income households, senior *737 households, or family members of the property owner. (Ibid.) Rent is restricted to established standards of affordable rent based on income and assets. (Santa Cruz County Code, § 13.10.681, subd. (e)(4).) The Costa-Hawkins Rental Housing Act, enacted effective January 1, 1996, set forth a statewide rule of law that "[n]otwithstanding any other provision of law, an owner of residential real property may establish the initial and all subsequent rental rates for a dwelling or a unit...." (Civ.Code, § 1954.52, subd. (a).) The statute contains comprehensive provisions as to when property owners have the right to set rental rates; it establishes exceptions to those rights; and it provides for a phase-in period for the new rates to take effect. Respondent county in this case concedes that the purpose and effect of the Costa-Hawkins Act is to preempt local rent control ordinances. (See also DeZerega v. Meggs (2000) 83 Cal.App.4th 28, 40-41, 99 Cal.Rptr.2d 366; Cobb v. San Francisco Residential Rent Stabilization & Arbitration Bd. (2002) 98 Cal.App.4th 345, 351-352, 119 Cal.Rptr.2d 741.)
The majority here would not reach the question whether the rent and occupancy restrictions in the county ordinance conflict with the Costa-Hawkins Act and are thus preempted. Although acknowledging that this question "must be determined judicially in an appropriate legal action," the majority concludes that such an action is barred by the operation of the 90-day statute of limitations governing challenges to zoning ordinances.
Government Code section 65009 sets forth a number of short statutes of limitations regarding zoning and planning decisions. The 90-day statute of limitations contained in Government Code section 65009, subdivision (c)(1)(B), runs from "the decision of a legislative body to adopt or amend a zoning ordinance."[1] The majority concludes that the local "decision" triggering the 90 days occurred when the county ordinance was amended in 1997 subsequent to the passage of the Costa-Hawkins Act. I cannot agree with this view, for several reasons. As a general rule, an amendment to a local ordinance triggers a challenge only as to the specific parts that are amended and not as to the entire ordinance. (Garat v. City of Riverside (1991) 2 Cal.App.4th 259, 289-290, 3 Cal.Rptr.2d 504, disapproved on other grounds in Morehart v. County of Santa Barbara (1994) 7 Cal.4th 725, 29 Cal. Rptr.2d 804, 872 P.2d 143; see also Gov. Code, § 9605 ["Where a section or part of a statute is amended, it is not to be considered as having been repealed and reenacted in the amended form."].) The 1997 amendments to county's ordinance increased the maximum allowable size of the dwelling unit in some cases, decreased the minimum parcel size, eliminated the condition restricting occupancy to two adults and made other non-substantive changes. Appellants did not challenge any of these provisions. I do not believe therefore that the 1997 amendments can be considered to be a local legislative "decision" relevant to the challenged restrictions that would start the running of the statute of limitations period. (See also De Anza Properties X, Ltd. v. County of Santa Cruz (9th Cir. 1991) 936 F.2d 1084, 1086-1087; Napa Citizens for Honest Government v. Napa County Bd. Of Supervisors (2001) 91 Cal. App.4th 342, 388, 110 Cal.Rptr.2d 579.)
A more fundamental concern I have is whether the challenged restrictions, although contained in an ordinance denominated a zoning ordinance, are properly characterized as a zoning decision, subject to the statute of limitations contained in *738 Government Code section 65009, subdivision (c)(1)(B). The restrictions focus on the users of the property rather than on the use, and they appear to intrude into the area of landlord/tenant relations that has been the subject of numerous state regulatory statutes. (See, e.g., Roble Vista Associates v. Bacon (2002) 97 Cal. App.4th 335, 340-341, 118 Cal.Rptr.2d 295.) Courts have found similar ordinances regulating the users of property to be "suspect" as zoning law. (City of Santa Barbara v. Adamson (1980) 27 Cal.3d 123, 133, 164 Cal.Rptr. 539, 610 P.2d 436; Coalition Advocating Legal Housing Options v. City of Santa Monica (2001) 88 Cal. App.4th 451, 459, 105 Cal.Rptr.2d 802.)
Furthermore, I believe the importance of the preemption doctrine to the orderly and equitable administration of justice in this state justifies a rule that avoids a result allowing local government to continue to enforce an ordinance that has been rendered unenforceable by state law. As the majority notes, there is no authority on point discussing the applicable limitations period for raising a claim that a local ordinance has been preempted by subsequently enacted state law. The majority finds that two other types of cases are sufficiently similar for purposes of applying the 90-day statute of limitations in Government Code section 65009: cases where a local zoning ordinance conflicts with the local general plan, and cases where the challenge is that a conditional use permit is void. (Gonzalez v. County of Tulare (1998) 65 Cal.App.4th 777, 76 Cal. Rptr.2d 707 (Gonzalez); Hensler v. City of Glendale (1994) 8 Cal.4th 1, 32 Cal. Rptr.2d 244, 876 P.2d 1043; Hawkins v. County of Marin (1976) 54 Cal.App.3d 586, 126 Cal.Rptr. 754; Ching v. San Francisco Bd. of Permit Appeals (1998) 60 Cal. App.4th 888, 70 Cal.Rptr.2d 700.)
I am not persuaded that the circumstances of our case are analogous to a case such as Gonzalez, which involved a county ordinance modifying the zoning affecting a particular property and issuing special use permits to the property owner. The challengers in Gonzalez were neighbors of the subject property who had opposed the zoning change throughout the permit process. They filed a mandamus action raising a claim, among others, that the rezoning ordinance was unlawful because it conflicted with the county's general plan. Although their action was timely filed, it was not served within the statutory time limitations in Government Code section 65009. The petitioners argued that the statute of limitations in Government Code section 65009 did not apply to their claim because the zoning ordinance conflicted with the general plan and was therefore unlawful when it was enacted. The court rejected this argument, finding that petitioners' failure to comply with the time requirements to challenge the local zoning decision basically rendered the zoning decision "immune from attack." (Gonzalez, supra, 65 Cal.App.4th at p. 789, 76 Cal.Rptr.2d 707.)
Our case is distinguishable from Gonzalez in several respects. The city's decision in Gonzalez clearly fell within Government Code section 65009, subdivision (c)(1)(B), as it was a "decision of a legislative body to adopt or amend a zoning ordinance." In our case there is some question, at least in my mind, whether the rent and occupancy restrictions constituted a zoning decision. And, in any event, the 1997 amendments of the second unit ordinance did not adopt, add or amend the pertinent portions of the restrictions challenged by appellants. Further, the court in Gonzalez explained that the county's failure to conform to the local general plan rendered the zoning decision "voidable, not void." (Gonzalez, supra, 65 Cal.App.4th at p. 789, 76 *739 Cal.Rptr.2d 707.) The petitioners were thus obliged to bring an action to set it aside on that basis within the applicable time limits. In our case, however, under the doctrine of preemption, a local decision that conflicts with state law is void. As the Supreme Court stated in Lesher Communications, Inc. v. City of Walnut Creek, supra, 52 Cal.3d at p. 544, 277 Cal.Rptr. 1, 802 P.2d 317, "[i]t is the preemptive effect of the controlling state statute ... which invalidates the ordinance." A court "does no more than determine the existence of the conflict." (Ibid.)
I would also distinguish Hensler v. City of Glendale, supra, 8 Cal.4th 1, 32 Cal. Rptr.2d 244, 876 P.2d 1043. Hensler stands for the proposition, as noted by the majority, that the statute of limitations governing an action raising a facial challenge to a local land use ordinance runs from the effective date of the ordinance. This rule cannot reasonably be applied here, as the effective date of the local ordinance was 1982, 14 years prior to the passage of the Costa-Hawkins Act and its preemptive effect. I further disagree with respondent county's position that the accrual of appellants' preemption cause of action was the date Costa-Hawkins was enacted, effective January 1, 1996. The enactment of a state statute cannot constitute a "decision" of a local legislative body, within the meaning of Government Code section 65009. Although the state statute may have immediate preemptive effect, the county has not acted in any way to give rise to a cause of action until a decision is made locally to enforce the ordinance. In my view that is the last element essential to a cause of action for preemption.
I believe the cases involving claims that a conditional use permit is void are more closely analogous to the circumstances before us. These cases hold that a petitioner claiming a condition imposed on the use of property is void must act within 90 days of the imposition of the alleged illegal condition. For example, in Hawkins v. County of Mann (1976) 54 Cal.App.3d 586, 126 Cal.Rptr. 754, the county issued a use permit to a religious group to construct low-cost housing. The surrounding neighbors opposed this throughout the permit process, but then waited two years after the use permit was issued to bring their lawsuit claiming that the use permit was null and void both because it violated zoning ordinances and because the zoning regulations were inconsistent with the general plan. The court found the action was time-barred. Similarly in Ching v. San Francisco Bd. of Permit Appeals, supra, 60 Cal.App.4th 888, 70 Cal.Rptr.2d 700, plaintiffs waited almost two years to challenge the issuance of a conditional use permit on the basis that one of the board members had a conflict of interest, and therefore that the Board's decision was void because it was in violation of the state Political Reform Act. The plaintiff argued for application of the four-year statute for actions to enforce the Political Reform Act, but the court found that the shorter statute of limitations for challenging the grant of a conditional use permit applied. Plaintiff argued further that the conditional use permit was void because it was issued in violation of the state statute. Relying on Hawkins, the court also rejected this argument, finding that an action challenging a permit must comply with the statute of limitations relating to the issuance of permits, even though the challenge is based on a claim that state law was violated.
The rule of these cases is a reasonable one: the issuance of a conditional use permit starts the accrual of any cause of action challenging the condition imposed. This rule is codified in Government Code section 65009, subdivision (c)(1)(E), which governs actions "to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use *740 permit, or any other permit." It is also consistent with my view of the case before us.
Because the doctrine of preemption requires that counties not adopt or enforce ordinances in conflict with state law, I would conclude that each instance of the application of a local ordinance imposing conditions that conflict with state law gives rise to a claim of preemption. These principles were applied recently in the criminal context in People v. McNeil (2002) 96 Cal. App.4th 1302, 118 Cal.Rptr.2d 54. In that case defendant was arrested for violating a local ordinance and was searched incident to her arrest. The court found that the local ordinance had been preempted decades earlier by a conflicting state Vehicle Code provision, and that it had been rendered void. It could therefore not be enforced to provide a reasonable basis for the arrest and search, even though it was still part of the local municipal code and had never been specifically challenged or repealed.
In another recent case, Howard Jarvis Taxpayers Assn. v. City of La Habra (2001) 25 Cal.4th 809, 107 Cal.Rptr.2d 369, 23 P.3d 601, a city enacted a utility users tax in violation of state law requiring voter approval. The local ordinance was not challenged within the applicable limitations period measured from the passage of the ordinance. However, the Supreme Court found that this was not the only event triggering the statute of limitations. Each act by the city to collect the tax under the invalid ordinance was determined to be a separate violation of state law, giving rise to a new cause of action to invalidate the ordinance and a new statute of limitations. I would apply the same reasoning to our case and find that a cause of action arises, and a corresponding statute of limitations begins, each time the county acts to enforce its ordinance by issuing a permit imposing the challenged conditions.
In summary, the California Constitution prohibits a county from enforcing an ordinance which is in conflict with general laws. (Cal. Const., art XI, § 7.) Appellants and amicus claim that the rent and occupancy restrictions contained in the county's ordinance here are in conflict with provisions of California's Costa-Hawkins Rental Housing Act. They argue that the issuance of a permit conditioned on the imposition of these restrictions thus constitutes enforcement of an unlawful ordinance, and that a claim of preemption accrues at this point. I agree. Even if the shortest 90-day statute of limitations applies, appellant Travis's claim is therefore timely. He objected to the conditions and exhausted his administrative remedies by filing an administrative appeal, which was heard and denied on June 21, 1999. He thereafter filed his petition for a writ of mandate in superior court within 90 days, on September 7, 1999.
I would therefore reverse the trial court's order denying the writ petition on the ground of the statute of limitations and remand the matter so that the court may hear and determine the question of preemption.
NOTES
[1] Petitioners' notice of appeal recites that they are appealing from "the Order filed on March 27, 2000, on Petition for Writ of Mandate" and from "the decisions on post-Order motions in the same matter." Petitioners purport to appeal for themselves and for Does 1-250,000.
[2] As noted above, the court's original post-judgment order denied petitioners' motion to vacate the judgment. "An order denying a motion to vacate an appealable judgment is generally not appealable if such appeal raises only matters that could be reviewed on appeal from the judgment itself." (Roomy v. Vermont Investment Corp. (1973) 10 Cal.3d 351, 358, 110 Cal.Rptr. 353, 515 P.2d 297.) "Where an order after an appealable judgment simply leaves the judgment intact and neither adds to nor subtracts from it, the order is not appealable." (City of Carmel-by-the-Sea v. Board of Supervisors (1982) 137 Cal.App.3d 964, 971, 187 Cal.Rptr. 379. See generally, Cal. Civil Appellate Practice (Cont.Ed.Bar 3d ed.2002) §§ 3:29-3:30, pp. 170-171.)

The trial court's original post-judgment order also denied petitioners' request for leave to amend their petition. Ordinarily, the denial of a motion for leave to amend a pleading is not an appealable order. (Dominguez v. City of Alhambra (1981) 118 Cal.App.3d 237, 241, 173 Cal.Rptr. 345.) Furthermore, post-judgment amendments to pleadings generally are permitted only if the judgment is vacated. (Young v. Berry Equipment Rentals, Inc. (1976) 55 Cal.App.3d 35, 38, 127 Cal.Rptr. 200.) Finally, petitioners make no argument on appeal that the trial court erred in denying them leave to amend; for that reason, we would not review that aspect of the order even if appealable. (See, e.g., Overland Plumbing, Inc. v. Transamerica Ins. Co. (1981) 119 Cal.App.3d 476, 482, 174 Cal.Rptr. 1.)
[3] As pertinent here, that subdivision provides: "Except as provided in subdivision (d), no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision: [¶] ... [¶] To attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance." (Gov.Code, § 65009, subd. (c)(1)(B).)

Further statutory references are to the Government Code unless otherwise specified.
[4] Effective January 1, 1996, the Legislature amended section 65009, subdivision (c), to shorten the limitations period to 90 days. (Stats.1995, ch. 253, § 1.)
[5] That subdivision provides as follows:

"An action or proceeding shall be commenced and the legislative body served within one year after the accrual of the cause of action as provided in this subdivision, if the action or proceeding meets both of the following requirements:
"(1) It is brought in support of or to encourage or facilitate the development of housing that would increase the community's supply of housing affordable to persons and families with low or moderate incomes, as defined in Section 50079.5 of the Health and Safety Code, or with very low incomes, as defined in Section 50105 of the Health and Safety Code, or middle-income households, as defined in Section 65008 of this code. This subdivision is not intended to require that the action or proceeding be brought in support of or to encourage or facilitate a specific housing development project.
"(2) It is brought with respect to actions taken pursuant to Article 10.6 (commencing with Section 65580) of Chapter 3 of this division, pursuant to Section 65589.5, 65863.6, 65915, or 66474.2 or pursuant to Chapter 4.2 (commencing with Section 65913).
"A cause of action brought pursuant to this subdivision shall not be maintained until 60 days have expired following notice to the city or county clerk by the party bringing the cause of action, or his or her representative, specifying the deficiencies of the general plan, specific plan, or zoning ordinance. A cause of action brought pursuant to this subdivision shall accrue 60 days after notice is filed or the legislative body takes a final action in response to the notice, whichever occurs first. A notice or cause of action brought by one party pursuant to this subdivision shall not bar filing of a notice and initiation of a cause of action by any other party." (§ 65009, subd. (d).)
[6] The exception is Sandpiper Mobile Village v. City of Carpinteria, supra, 10 Cal.App.4th at p. 547, 12 Cal.Rptr.2d 623. In the Sandpiper case, the court applied the five-year statute to a regulatory taking claim. (Id. at p. 549, 12 Cal.Rptr.2d 623.) However, it did so without analysis, citing only Garden Water Corp. v. Fambrough, supra, 245 Cal.App.2d at p. 328, 53 Cal.Rptr. 862. (Sandpiper Mobile Village v. City of Carpinteria, supra, 10 Cal.App.4th at p. 549, 12 Cal.Rptr.2d 623.) As noted above, Garden Water was a physical takings case, and the court there relied heavily on Frustuck, another physical takings case, in deciding to apply the five-year statute. (Garden Water Corp. v. Fambrough, supra, 245 Cal.App.2d at p. 328, 53 Cal.Rptr. 862.) Furthermore, Sandpiper was decided before Hensler, which distinguished Frustuck and its progeny on their facts and which also cast doubt on the precedential value of those cases following the enactment of section 65009. (Hensler, supra, 8 Cal.4th at pp. 23-24, 32 Cal.Rptr.2d 244, 876 P.2d 1043.) Although Hensler did not specifically mention Sandpiper, we question its continued vitality given its underpinnings. We note, however, that our high court has since mentioned Sandpiper, without either criticism or endorsement of its holding as to the statute of limitations. (See, Santa Monica Beach, Ltd. v. Superior Court, supra, 19 Cal.4th at p. 961, 81 Cal.Rptr.2d 93, 968 P.2d 993.) In any event, we decline to apply Sandpiper here.
[7] Of course, a judgment void on its face may be set aside at any time. (Hayashi v. Lorenz (1954) 42 Cal.2d 848, 851, 271 P.2d 18; Estate of Estrem. (1940) 16 Cal.2d 563, 572, 107 P.2d 36; Plaza Hollister Ltd. Partnership v. County of San Benito (1999) 72 Cal.App.4th 1, 19, 84 Cal.Rptr.2d 715.) But we decline to extend that doctrine, which is unique to judgments, to the distinct area of local land use legislation. (Hawkins v. County of Marin, supra, 54 Cal.App.3d at p. 593, 126 Cal.Rptr. 754.) In our view, doing so "would vitiate the unambiguous limitations provisional" contained in statutes governing land use decisions. (Ibid.)
[8] The entire thrust of the petition, and its sole ground for relief, is the petitioners' claim that the Ordinance is unlawful on its face because it is preempted by state law. Thus, this is not a case in which an individual property owner suffered an unconstitutional taking as a result of the application of an otherwise valid ordinance to his particular property. (See Hensler, supra, 8 Cal.4th at p. 21, 32 Cal.Rptr.2d 244, 876 P.2d 1043: "An otherwise valid statute or regulation may be invalid as applied to a particular property if compensation is not paid.") Had this been such a case, the statute of limitations would have begun running when the County denied Travis's appeal of the permit conditions. An as-applied taking claim by Travis thus would have been timely, since he filed his petition within 90 days after the County's denial of his administrative appeal. However, as we explained above, the petition does not state any as-applied taking claims separate from its facial attack on the Ordinance. The fact that the petition was timely in relation to Travis's exhaustion of administrative remedies does not operate to extend the limitation period on the petitioners' claims of facial invalidity. We therefore apply accrual rules appropriate to a facial challenge to the Ordinance.
[*] Judge of the Monterey Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] The full text of this subdivision is reprinted in footnote 3 of the majority opinion.